**BUCKMAN–PEIRSON, Appellant,**

v.

**BRANNON, Appellee.**

[Cite as *Buckman–Peirson v. Brannon,* 159 Ohio App.3d 12, 2004-Ohio-6074.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. CA 20320.

Decided Nov. 5, 2004.

Myers & Frayne Co., L.P.A., Jacob A. Myers and Frederick B. Hatton, for appellant.

Bieser, Greer & Landis, L.L.P., David C. Greer and Jennifer L. Hill, for appellee.

MARK P. PAINTER, Judge.

{¶ 1} Two questions are presented here: (1) what court has jurisdiction to hear a legal-malpractice claim arising from a wrongful-death case, and (2) in Ohio,

what evidence of emotional damage is required to sustain a claim for intentional infliction of emotional distress? We hold that the answer to the first question is the common pleas court. The answer to the second is that the plaintiff must present some evidence, not necessarily expert, in addition to her own testimony.

{¶ 2} Ashley Buckman–Peirson sued her attorney, Dwight D. Brannon, for legal malpractice, breach of contract, replevin, and intentional infliction of emotional distress.

{¶ 3} Brannon had represented Peirson in several legal actions, including settlement of her claim for the wrongful death of her husband. The trial court, a common pleas court, granted partial summary judgment in favor of Brannon on Peirson's malpractice and contract claims, holding that the probate court had exclusive jurisdiction over the issues. (Technically, the difference is between the general division of common pleas court and the probate division. These are really more like separate courts. For convenience, we refer to the general division as "common pleas court" and the probate division as "probate court.")

{¶ 4} The trial court then granted partial summary judgment in favor of Brannon on Peirson's intentional-infliction-of-emotional-distress claim, ruling that there were no genuine issues of material fact.

{¶ 5} We reverse the trial court's grant of summary judgment on the malpractice and contract claims but affirm the grant of summary judgment on Peirson's claim for intentional infliction of emotional distress.

## I. The Complaint

{¶ 6} Peirson first hired Brannon to represent her in 1996. Brannon filed suit on Peirson's behalf against Prudential and others, alleging the mishandling of her investments. In 2000, Peirson hired Brannon to represent her in her claim against the Huber Heights Police Department for the wrongful death of her husband. Brannon negotiated a settlement, which the probate court approved.

{¶ 7} In her complaint filed in November 2002, Peirson alleged that Brannon had committed legal malpractice when he (1) neglected to inform her that she had a right to bring a survival claim; (2) did not inform her that, as the decedent's spouse, she had a legal right to more of the estate's assets than her husband's children; (3) failed to inform her that, as the surviving spouse, she was entitled to an allowance and to have the estate pay her husband's funeral expenses; (4) simultaneously represented her and her stepchildren, which was a conflict of interest; and (5) incorrectly informed her that her interest in the insurance proceeds available to settle the claims was identical to the interests of the stepchildren. These are, of course, only allegations, but in the procedural posture of this case, we are constrained to assume that they are true.

{¶ 8} In her breach-of-contract claim, Peirson alleged that before Brannon's settlement of her husband's wrongful-death case, Brannon had told her that he would charge her a fee of 33 percent of whatever she received from the suit. But Peirson claimed that the agreement she signed did not state a percentage of money for attorney fees. Peirson alleged that after she signed the agreement, Brannon inserted a term of 40 percent. In her complaint, she sought a refund of a portion of the 40 percent fee retained by Brannon.

{¶ 9} In her claim of intentional infliction of emotional distress, Peirson alleged that Brannon had verbally and sexually harassed her continuously from 1996 until she fired him in 2002. Specifically, Peirson alleged that Brannon had made unwanted and offensive sexual advances, propositions, and comments and that he had used abusive and foul language towards her. Peirson claimed that because of the severe emotional distress caused by Brannon's sexual harassment and abuse, she had sought help from her family doctor and then from a psychiatrist. As a result of her problems, Peirson stated, her doctor had doubled her prescription for medicine to treat her nerves and sleeplessness.

## II. Common Pleas Court Is the Proper Jurisdiction

{¶ 10} In her first assignment of error, Peirson argues that the common pleas court erred when it determined that it did not have subject-matter jurisdiction over her malpractice and breach-of-contract claims. Peirson argues that the common pleas court, and not the probate court, has exclusive jurisdiction over malpractice and breach-of-contract claims. She is correct.

{¶ 11} The probate court is a court of limited jurisdiction. As such, its jurisdiction is limited to only those matters conferred by statute and by the Ohio Constitution.[1]

{¶ 12} The General Assembly, in R.C. 2101.24, has specifically stated the probate court's jurisdiction. Neither legal-malpractice nor breach-of-contract claims are listed in that section.

{¶ 13} But Brannon argues, and the trial court agreed, that under R.C. 2125.03(A) and this court's decision in *Comer v. Bench,*[2] the probate court had jurisdiction over Peirson's claims. He contends that the probate court had jurisdiction because the claims were related to Peirson's wrongful-death claim, and the probate court had jurisdiction over the settlement of the wrongful-death claim.

---

1. See *Zuendel v. Zuendel* (1992), 63 Ohio St.3d 733, 735, 590 N.E.2d 1260.

2. *Comer v. Bench,* 2nd Dist. No. CA 19229, 2003-Ohio-2821, 2003 WL 21267232.

{¶ 14} In *Comer*, a wrongful-death claim by a four-year-old girl was settled and the settlement was approved by the probate court, with the girl's mother allegedly signing the settlement agreement.[3] Years later, after reaching the age of majority, the girl sued in common pleas court for a declaratory judgment.[4] The girl claimed that her mother's signature had been forged and requested that the court declare the agreement void.[5]

{¶ 15} After the trial court found that the mother's signature had been forged and voided the agreement for fraud, this court reversed, holding that the common pleas court lacked jurisdiction. This court stated, "By enacting R.C. 2125.03(A), the General Assembly conferred exclusive jurisdiction on the probate division of the court of common pleas *to approve settlements in actions for wrongful death and to order distribution of the settlement proceeds*."[6] (Emphasis added.) We held that where there was a special statutory method for determining a particular type of case, it could not be bypassed by a declaratory-judgment action in a different court.[7] We further held that any relief from the probate court's order of approval and distribution had to be sought in the probate court.[8]

{¶ 16} We believe that *Comer* was correctly decided but that it is irrelevant to the present case. The issue in *Comer* was whether the settlement was valid and whether it should have been changed because of a fraud committed at the time the settlement was made. The claimed fraud was in the *approval of the settlement*—a matter solely within the probate court's jurisdiction. The suit in *Comer* was not for legal malpractice or for breach of contract, but instead sought to reopen and undo the *settlement* of the wrongful-death suit.

{¶ 17} In this case, in contrast, Peirson did not seek to reopen or undo the settlement agreement approved by the probate court for her wrongful-death suit. She sued her attorney for what she claimed was substandard representation and breach of a contract. These claims developed out of the wrongful-death suit, but were distinct claims that involved separate legal issues. And the wrongful-death suit itself was in common pleas court, not in probate court.

---

3.  Id. at ¶ 2.

4.  Id. at ¶ 4.

5.  Id.

6.  Id. at ¶ 15.

7.  Id. at ¶ 14.

8.  Id. at ¶ 16.

{¶ 18} The malpractice and breach-of-contract claims did not directly implicate the approval and distribution of the wrongful-death settlement. In fact, Peirson could not, through the common pleas court, have reopened the wrongful-death settlement or the administration of her husband's estate. But what she could do was sue her attorney in common pleas court for the losses she claimed that she had sustained due to her attorney's alleged incompetence.

{¶ 19} Therefore, *Comer* is not applicable, and the trial court erred in relying on it to support its ruling that the probate court had exclusive jurisdiction over Peirson's malpractice and breach-of-contract claims.

### III. Other Jurisdictions Unanimously Agree

{¶ 20} Our conclusion is bolstered by the Sixth Appellate District's holding in *Elden v. Sylvania Sav. Bank.*[9] In *Elden,* a surviving spouse and heirs-at-law sued the executor of an estate and the estate's trustees in common pleas court, alleging that the defendants had breached their fiduciary duty to the estate and had failed to exercise the ordinary legal knowledge and skill of an attorney.

{¶ 21} The common pleas court ruled that the probate court had exclusive jurisdiction over the suit. But the appellate court reversed, holding that the suit alleged malpractice, which was a matter not within the jurisdiction of the probate court under R.C. 2101.24. While the initial legal matter was one appropriate for a probate court—the handling of an estate—the claim of legal malpractice involved separate issues and was properly within the jurisdiction of the common pleas court.[10]

{¶ 22} Brannon argues that *Elden* is not applicable to the facts of this case because the original legal action in *Elden* involved the administration of an estate, while Peirson's suit was for wrongful death. We fail to see why this distinction makes a difference. The original cause of action is not important. The relevant consideration is that in both *Elden* and the case at bar, the cause of action actually at issue—and for which jurisdiction was being determined—was malpractice. It is irrelevant what initial or underlying cause of action the lawyer in question allegedly mishandled. A suit for malpractice or breach of contract is properly in common pleas court.

{¶ 23} The Eleventh Appellate District has reached the same conclusion in a similar case. In *Burns v. Daily,*[11] the probate court appointed an attorney to represent a woman during her appeal of the determination that she was "incapac-

9. *Elden v. Sylvania Sav. Bank* (Oct. 21, 1983), 6th Dist. No. L–83–211, 1983 WL 6974.

10. Id.

11. *Burns v. Daily* (1996), 114 Ohio App.3d 693, 683 N.E.2d 1164.

itated." Later, after her death, the beneficiary of the woman's testamentary trust sued the woman's appointed attorney, claiming that the attorney had taken excessive legal fees and concealed assets from the probate estate. After the probate court ruled that the attorney had wrongfully concealed assets from the probate estate, the Eleventh Appellate District reversed, holding that the probate court lacked jurisdiction to decide the matter.

{¶ 24} The court stated, "If the allegations in the complaint are true, and Daily did take excessive attorney fees, then an action would lie against him to recover the balance on a theory of breach of contract, breach of fiduciary duty, money had and received, an accounting, conversion, fraudulent misrepresentation, or the like. * * * These actions, however, must be pursued in the general division of the court of common pleas, for the probate court has no jurisdiction over them."[12]

{¶ 25} In addition, recently, in *Gilpin v. Bank One Corp,*[13] the Twelfth Appellate District has held that actions alleging legal malpractice "are within the jurisdiction of the general division of the common pleas court, not within the jurisdiction of the probate court."[14]

{¶ 26} Because the common pleas court, not the probate court, had jurisdiction over Peirson's claims for legal malpractice and breach of contract, we sustain Peirson's first assignment of error.

### IV. Intentional Infliction of Emotional Distress

{¶ 27} In her second assignment of error, Peirson argues that the trial court erred when it granted summary judgment in favor of Brannon on her claim of intentional infliction of emotional distress.

{¶ 28} We review a grant of summary judgment de novo.[15] Brannon was entitled to prevail on his summary-judgment motion only if (1) there was no genuine issue of material fact, (2) he was entitled to judgment as a matter of law, and (3) it appeared that reasonable minds could come to but one conclusion when viewing the evidence in favor of Peirson, and that conclusion was adverse to Peirson.[16]

---

12. Id. at 704, 683 N.E.2d 1164.

13. *Gilpin v. Bank One Corp.,* 12th Dist. No. CA2003–09–073, 2004-Ohio-3012, 2004 WL 1301304.

14. Id. at ¶ 12; see, also, *Carpenter v. Levering* (Apr. 17, 1987), 5th Dist. No. 86–CA–19, 1987 WL 9872; *Trudeau v. Kuhnle* (Mar. 2, 1990), 6th Dist. No. L–89–150, 1990 WL 19412.

15. See *Doe v. Shaffer* (2000), 90 Ohio St.3d 388, 390, 738 N.E.2d 1243.

16. See *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241.

{¶ 29} To establish a claim for intentional infliction of emotional distress, a plaintiff must show (1) that the actor either intended to cause emotional distress or knew or should have known that the actions taken would result in serious emotional distress to the plaintiff, (2) that the actor's conduct was so extreme and outrageous as to go "beyond all possible bounds of decency" and was such that it could be considered as "utterly intolerable in a civilized community," (3) that the actor's actions were the proximate cause of plaintiff's psychological injury, and (4) that the mental anguish suffered by the plaintiff was serious and of such a nature that "no reasonable man could be expected to endure it."[17]

{¶ 30} The trial court ruled that Peirson had presented evidence that Brannon had "made sexual advances towards [Peirson] and crude comments that resulted in embarrassment to her." The court also ruled that Brannon's actions were "ill advised and gross, but not beyond all possible bounds of decency." The court then conceded that the fact that Brannon was Peirson's attorney "in a difficult and potentially lucrative lawsuit" complicated the matter, concluding that "as a consequence, [Peirson] may have felt compelled to put up with many of defendant's shenanigans in order to successfully conclude her litigation."

{¶ 31} While its decision did not explicitly so state, the trial court apparently concluded that there was sufficient evidence on the first two elements of intentional infliction of emotional distress to survive Brannon's summary-judgment motion. We conclude that there was sufficient evidence that, if believed, could have convinced reasonable minds that Brannon either intended to cause emotional distress or knew or should have known that his actions would result in serious emotional distress to Peirson and that his conduct was so extreme and outrageous as to go beyond all possible bounds of decency. Therefore, the first two elements of intentional infliction of emotional distress were satisfied for purposes of summary judgment.

{¶ 32} The trial court based the summary judgment for Brannon on its conclusion that Peirson could not prove the last two elements of the tort, specifically, proximate cause and serious mental distress.

{¶ 33} The Ohio Supreme Court, in *Paugh v. Hanks,* has defined "serious" emotional distress as "beyond trifling mental disturbance, mere upset or hurt feelings."[18] The court has stated, "[S]erious emotional distress describes emotional injury which is both severe and debilitating. Thus, serious emotional distress may be found where a reasonable person, normally constituted, would be

---

17. See *Hale v. Dayton,* 2nd Dist. No. CA 18800, 2002-Ohio-542, 2002 WL 191588. See, also, *Yeager v. Local Union 20* (1983), 6 Ohio St.3d 369, 374–375, 6 OBR 421, 453 N.E.2d 666.

18. *Paugh v. Hanks* (1983), 6 Ohio St.3d 72, 78, 6 OBR 114, 451 N.E.2d 759.

unable to cope adequately with the mental distress engendered by the circumstances of the case. A non-exhaustive litany of some examples of serious emotional distress should include traumatically induced neurosis, psychosis, chronic depression, or phobia."[19]

{¶ 34} Peirson testified that as a direct result of the severe emotional distress caused by Brannon's verbal and sexual harassment and abuse, she had seen her family doctor, Dr. Fronista. Peirson testified that at her appointment with Dr. Fronista, she was crying and had high blood pressure. According to Peirson, after discussing with him what she was experiencing as a result of Brannon's actions, Dr. Fronista referred Peirson to a psychiatrist and suggested that Peirson seek an injunction against Brannon.

{¶ 35} Peirson testified that she then saw a psychiatrist, Dr. Donna Mayer, for the specific purpose of dealing with her emotional distress resulting from Brannon's harassment and abuse. Peirson also discussed her emotional distress with a Dr. Rahimi. Peirson further testified that because of the emotional distress caused by Brannon's actions, her prescription for Ativan, which she had been taking for nerves and sleeplessness, had been doubled.

{¶ 36} Brannon argues that he did not cause Peirson emotional distress because Peirson had a history of psychological problems dating back to 1965. He notes that she had been taking antidepressant medication since 1992 and stress-relief medicine since 1990. Brannon argues that given Peirson's "extensive" history of psychological problems, she could not present any evidence demonstrating that Brannon's actions had proximately caused her emotional distress. Brannon concludes, in somewhat contradictory fashion, that any emotional distress experienced by Peirson due to his actions was not "serious" emotional distress.

{¶ 37} But the simple fact that Peirson had previously suffered emotional problems in her life, before her encounters with Brannon, did not mean that Brannon could not have caused Peirson extreme emotional distress. There is no free pass to inflict emotional abuse on fragile people because they have previously suffered through emotional trauma. Under Brannon's logic, people who have experienced emotional distress and who have sought professional treatment are somehow immune to further emotional distress, or any emotional distress suffered by them can be attributed only to the person's past traumatic experiences.

{¶ 38} We are not persuaded by Brannon's arguments. If Peirson had presented sufficient evidence demonstrating that Brannon's conduct directly led to her emotional distress and that she had suffered severe and debilitating

19. Id.

emotional distress, her history of emotional problems would not have been fatal to her claim. Despite past incidents of psychological problems or emotional trauma, Peirson had every right to pursue a properly supported claim for intentional infliction of emotional distress.

## V. Necessity of Medical or Corroborating Testimony

{¶ 39} But unfortunately for Peirson, her claim against Brannon could not survive his summary-judgment motion because she did not present sufficient evidence that Brannon had caused her serious emotional distress.

{¶ 40} A plaintiff claiming severe and debilitating emotional distress must present some "guarantee of genuineness" in support of his or her claim to prevent summary judgment in favor of the defendant.[20] The Ohio Supreme Court has held, "In most instances, expert medical testimony will help establish the validity of the claim of serious emotional distress."[21]

{¶ 41} But, in Ohio at least, expert medical testimony concerning the plaintiff's mental distress is not always required.[22] Ohio courts have held that, as an alternative to and in lieu of expert testimony, a plaintiff may offer the testimony of lay witnesses acquainted with the plaintiff to show significant changes that they have observed in the emotional or habitual makeup of the plaintiff.[23] (Though some Ohio courts have held that expert medical testimony may still be required when the mental distress was "of a medically significant nature that exceeded the capability of a jury of nonprofessionals to reasonably understand and evaluate."[24])

{¶ 42} Jurisdictions outside of Ohio vary as to whether to require expert medical testimony to substantiate claims of emotional distress. While some jurisdictions require the expert testimony,[25] others have concluded that expert

---

20. See *Paugh*, supra note 18, at 76, 6 OBR 114, 451 N.E.2d 759.

21. *Schultz v. Barberton Glass Co.* (1983), 4 Ohio St.3d 131, 135, 4 OBR 376, 447 N.E.2d 109; see, also, *Paugh*, supra note 18, at 80, 6 OBR 114, 451 N.E.2d 759.

22. See *Foster v. McDevitt* (1986), 31 Ohio App.3d 237, 239, 31 OBR 520, 511 N.E.2d 403; *Paugh*, supra note 18, at 80, 6 OBR 114, 451 N.E.2d 759; *Uebelacker v. Cincom Systems, Inc.* (1988), 48 Ohio App.3d 268, 276, 549 N.E.2d 1210.

23. See *Paugh*, supra note 18, at 80, 6 OBR 114, 451 N.E.2d 759; *Uebelacker*, supra note 22, at 276, 549 N.E.2d 1210.

24. See *Grote v. J.S. Mayer & Co., Inc.* (1990), 59 Ohio App.3d 44, 47, 570 N.E.2d 1146; see, also, *Hayes v. Heintz*, 8th Dist. No. 79335, 2002-Ohio-2608, 2002 WL 1041370.

25. See *Kazatsky v. King David Mem. Park, Inc.* (1987), 515 Pa. 183, 191, 527 A.2d 988; *Vallinoto v. DiSandro* (R.I.1997), 688 A.2d 830, 839; *Childs v. Williams* (Mo.App.1992), 825 S.W.2d 4, 10; *Born v. Medico Life Ins. Co.* (Minn.App.1988), 428 N.W.2d 585, 590.

proof is not mandatory.[26]

{¶ 43} Those courts that require expert medical testimony reason that it is necessary to prevent the tort from being reduced to a single element of outrageousness.[27] By requiring expert proof, the elements of outrageous conduct and serious mental injury remain distinct.[28] They also contend that expert proof is not difficult to obtain.[29]

{¶ 44} The jurisdictions that do not require expert medical testimony contend that the extreme and outrageous character of the defendant's conduct is in itself important evidence that the distress episodes took place.[30] Moreover, "expert testimony is not essential because other reliable forms of evidence, including physical manifestations of distress and subjective testimony, are available."[31]

{¶ 45} Finally, these jurisdictions reason that expert testimony is normally not necessary, because a jury is generally capable of determining whether a defendant's conduct has caused a plaintiff serious mental injury.[32] The West Virginia Supreme Court noted, "While expert testimony is often presumed to be helpful to the jury, 'this presumption vanishes where the testimony concerns matters within the everyday knowledge and experience of a lay juror.' "[33] The court also noted that the rule of evidence concerning expert testimony allows expert testimony if it will assist the trier of fact to understand the evidence or to determine a fact in issue and concluded that in many instances, expert testimony may be helpful but is not mandatory.[34] This trust in the jury is consistent with the Ohio Supreme

---

26. See *Miller v. Willbanks* (Tenn.1999), 8 S.W.3d 607, 613; *Tanner v. Rite Aid of West Virginia, Inc.* (1995), 194 W.Va. 643, 655, 461 S.E.2d 149; *Chandler v. Denton* (Okla.1987), 741 P.2d 855, 867; *Richardson v. Fairbanks N. Star Borough* (Alaska 1985), 705 P.2d 454, 457; *McKnight v. Simpson's Beauty Supply, Inc.* (1987), 86 N.C.App. 451, 454, 358 S.E.2d 107; *Vance v. Vance* (1979), 286 Md. 490, 502–503, 408 A.2d 728; *Christians v. Christians* (S.D.2001), 637 N.W.2d 377, 389–390; *Brower v. Ackerley* (1997), 88 Wash.App. 87, 943 P.2d 1141.

27. See *Kazatsky,* supra note 25, at 197, 527 A.2d 988.

28. Id.

29. Id.

30. See *Chandler,* supra note 26.

31. *Miller,* supra note 26.

32. See *McKnight,* supra note 26.

33. *Tanner,* supra note 26, at 654, 461 S.E.2d 149, quoting 2 Franklin D. Cleckley, Handbook on Evidence for West Virginia Lawyers (3d Ed.1994), Section 7–2(A)(2).

34. See *Tanner,* supra note 26, at 654, 461 S.E.2d 149.

Court's reasoning that "[t]he jurors themselves, [sic] can refer to their own experiences in order to determine whether, and to what extent, the defendant's conduct caused the serious emotional distress."[35]

## VI. Medical Testimony Not Necessary, but Some Testimony Is

{¶ 46} Therefore, we conclude that although expert testimony may be a helpful and effective method of proving emotional distress and its relationship to the defendant's conduct, in Ohio it is not always necessary. The question then becomes what evidence of emotional distress is sufficient? More specifically, is the testimony of the plaintiff alone enough?

{¶ 47} In *Richardson v. Fairbanks N. Star Borough,*[36] the Alaska Supreme Court declared that expert medical testimony need not be the exclusive means of ascertaining a party's mental state. But the court then held that the testimony of the two plaintiffs was not enough to prove that the defendant's action of killing their pet dog caused them severe emotional distress.

{¶ 48} In *Richardson v. CVS Corp.,*[37] a United States District Court applied Tennessee law, under which there was no necessity to offer expert medical testimony to prove emotional distress. But the court concluded that the plaintiff had not presented sufficient proof that she had suffered severe emotional distress, because the only evidence the plaintiff offered was her statement that she had suffered severe emotional injury in the form of depression. Noting that the record did not contain any other evidence of the plaintiff's depression, the court granted summary judgment for the defendant on the claim for intentional infliction of emotional distress.

{¶ 49} Turning to Ohio cases, we note that in *Powell v. Grant Med. Ctr.*[38] the Tenth Appellate District acknowledged that, in Ohio, expert medical testimony was not essential, but it then concluded that the plaintiffs had failed to provide sufficient evidence of severe emotional distress. The plaintiffs testified that the defendant hospital's conduct—the mishandling of their dead mother's body—had made them feel "shocked, upset, angry, guilty, and/or sad," and one plaintiff testified that the dosage of his antidepressant medication was increased after his mother's death. The plaintiffs also offered testimony from a mental health counselor, a funeral director, and a hospice worker that they were having

---

35. See *Paugh,* supra note 18, at 80, 451 N.E.2d 759.

36. Supra note 26.

37. (2001), 207 F.Supp.2d 733, 746.

38. (2002), 148 Ohio App.3d 1, 2002-Ohio-443, 771 N.E.2d 874.

difficulty dealing with the events surrounding their mother's death.[39] But the court concluded that the plaintiffs had "failed to establish that the anger, grief, upset and other emotional distress they allegedly suffered was both severe and debilitating" and affirmed the summary judgment for the defendant.[40]

{¶ 50} In *Smullen v. Interfact Polygraphs Inc.*,[41] the Eighth Appellate District held that when the plaintiff did not submit any evidence from lay witnesses or from mental-health professionals in support of her allegation of severe emotional distress, but submitted only her own testimony about being upset, the plaintiff had failed to prove a severe psychological injury. The court affirmed a grant of summary judgment for the defendant.

{¶ 51} Similarly, in *Motley v. Flowers & Versagi Court Reporters*,[42] the Eighth Appellate District again held that the plaintiff had failed to prove a severe and debilitating injury when the only evidence she offered was her own testimony. The plaintiff offered an affidavit stating that she had eventually developed chest pains whenever the defendant spoke to her and that she had sought psychotherapy because of how the defendant treated her. She also submitted her account of her interaction with her doctors. The court noted that the plaintiff did not offer either expert medical testimony or any lay testimony regarding any changes in her emotional or habitual makeup and concluded that her claim could not survive the defendant's motion for summary judgment.

{¶ 52} And finally, in *Anthony v. United Tel. Co.*,[43] the United States District Court for the Northern District of Ohio granted the defendant's motion for summary judgment in an intentional-infliction-of-emotional-distress case. The court acknowledged that under Ohio law, the plaintiff was not required to offer expert medical testimony, but determined that her claim failed because she had provided no expert or lay testimony regarding her emotional distress. The plaintiff claimed that she testified "at length about her debilitating and diagnosed depression which has required medical treatment." But the court stated that the plaintiff had "submitted neither expert testimony nor the testimony of lay witnesses who are acquainted with her and can testify that Ms. Anthony suffered the kind of severe emotional response required under Ohio law for a claim of intentional infliction of emotional distress. Her own affidavit does not provide

---

**39.** Id. at ¶ 17–19.

**40.** Id. at ¶ 20.

**41.** (Oct. 3, 1991), 8th Dist. No. 58722, 1991 WL 199495.

**42.** (Dec. 11, 1997), 8th Dist. No. 72069, 1997 WL 767466.

**43.** (2002), 277 F.Supp.2d 763, 777.

the 'guarantee of genuineness' necessary to survive a motion for summary judgment."

{¶ 53} Though there are many cases similar to the ones cited here where the plaintiff's testimony, standing alone, was held insufficient to prove severe emotional distress,[44] we should mention that there are cases in which the plaintiff's testimony has been held sufficient.

{¶ 54} For example, in *Oyster v. S.M.E. Cement Co.*,[45] the Fifth Appellate District held that the testimony of the plaintiffs that the defendant's blasting at a nearby mine site was loud and constant and had caused them extreme anxiety and stress was sufficient to demonstrate that they had experienced severe emotional distress. And in *Doe v. Roman*,[46] the same court held that the plaintiff's testimony that she had a hard time "trusting anyone" after her school principal did not report or prevent sexual abuse by her teacher was sufficient proof of severe emotional distress to overcome the defendant's motion for summary judgment.

{¶ 55} The threshold showing of proof required by a plaintiff to survive summary judgment should not be high—we should be wary of using summary judgment to deny plaintiffs their day in court. But in *Paugh v. Hanks*, the Ohio Supreme Court has stated the need for some "guarantee of genuineness" that "insures that the mental injury is serious enough to be rendered compensable."[47] We believe that the courts that require only the plaintiff's testimony are ignoring the Ohio Supreme Court's guidance in *Paugh*.

{¶ 56} We conclude that a plaintiff in a case for intentional infliction of emotional distress must present some evidence beyond the plaintiff's own testimony that he or she has experienced emotional distress due to the defendant's actions. Though Ohio is not as strict as some states in that it allows claims to proceed based on lay testimony only, there must still be some additional component to the plaintiff's evidence supporting an allegation of severe emotional distress that provides a "guarantee of genuineness."

{¶ 57} Therefore, though Peirson's claim for intentional infliction of emotional distress should not have failed because she chose not to present expert medical

---

**44.** See *Criss v. Springfield Twp.* (June 8, 1988), 9th Dist. Nos. CA 13262 and CA 13271, 1988 WL 61055; *Oswald v. Fresh Mark/Sugardale, Inc.* (Nov. 9, 1992), 5th Dist. No. CA–8906, 1992 WL 330282; *Colton v. Ford Motor Credit Co.* (July 30, 1986), 9th Dist. No. 3916, 1986 WL 8538.

**45.** (Nov. 30, 1987), 5th Dist. Nos. CA–7098, and CA–7207, 1987 WL 27834.

**46.** 5th Dist. No. 2001–AP–05–0044, 2002-Ohio-6671, 2002 WL 31732468.

**47.** See *Paugh*, supra note 18, at 76, 6 OBR 114, 451 N.E.2d 759.

testimony, it did fail because she did not provide evidence beyond her own testimony that she had suffered severe emotional distress.

{¶ 58} The only evidence Peirson offered to support her claim that Brannon's behavior had caused her serious emotional distress was her deposition testimony. Peirson testified that she had sought help from two different doctors for the emotional distress caused by Brannon, that she was treated by a psychiatrist, and that her medication was doubled to help her deal with her suffering.

{¶ 59} We conclude that Peirson's testimony, by itself, was not sufficient to support her claim that Brannon's behavior had caused her severe emotional distress. Had Peirson offered testimony consistent with her own from any of her doctors, or perhaps from friends or family members who had observed her emotional distress during these times, Peirson's claim would likely have survived summary judgment.

{¶ 60} Often, in cases in which courts have concluded that the evidence did not support a finding of severe emotional distress, the plaintiffs had not sought medical treatment. Or in many cases, the plaintiffs so effectively dealt with the effects of their emotional distress that those around them did not realize the extent of their suffering. If Peirson's testimony is believed, she could have provided ample testimony from others that supported her testimony and would have allowed her claim to survive summary judgment. But without such additional testimony, there simply was not enough evidence to guarantee the genuineness of her claim of severe emotional distress and to create issues of material fact on the elements of causation and emotional injury.

{¶ 61} Because Peirson did not present sufficient evidence to survive summary judgment on her intentional-infliction-of-emotional-distress claim, the trial court did not err in granting summary judgment in favor of Brannon. Therefore, we overrule Peirson's second assignment of error.

### VII. We Reverse on the First Assignment, Affirm on the Second

{¶ 62} We affirm the trial court's judgment on the intentional-infliction-of-emotional-distress claim. But we reverse and remand for further proceedings the claims for breach of contract and legal malpractice.

Judgment affirmed in part
and reversed in part,
and cause remanded.

WALSH and POWELL, JJ., concur.

MARK P. PAINTER, of the First Appellate District, JAMES E. WALSH and STEPHEN W. POWELL, of the Twelfth Appellate District, sitting by assignment.