OPINION
{¶ 1} Defendant-appellant, attorney David Deutsch, appeals a decision of the Montgomery County Court of Common Pleas ("trial court") granting summary judgment in favor of plaintiff-appellee, David Batteiger, in a legal malpractice action.[1] *Page 2 
 {¶ 2} In April 1999, Sarah Ann Batteiger died as a result of injuries sustained in a collision with a vehicle driven by an intoxicated motorist. The vehicle driven by Sarah Ann was owned by her father, David Batteiger ("Batteiger"). Batteiger is also the father of Peter Batteiger and the former husband of Mary Jo Batteiger. At the time of the accident, Batteiger and Mary Jo were already divorced, and Sarah Ann and Peter lived primarily with their mother, Mary Jo. Mary Jo was employed by Grandview Hospital, which had an automobile insurance policy with United States Fidelity and Guaranty Company ("USF G").
 {¶ 3} A few days after the accident, Batteiger, both individually and in his capacity as the proposed administrator of his daughter's estate, retained appellant for legal services with regard to Sarah Ann's death. Appellant eventually also represented Mary Jo and Peter, both individually. On April 19, 1999, Batteiger was appointed administrator of his daughter's estate in the Miami County Court of Common Pleas, Probate Division (the "probate court").
 {¶ 4} Appellant first settled with the tortfeasor's insurer, Progressive Insurance Company. That settlement was filed and approved in the probate court, and an appropriate distribution ordered. In September 1999, on behalf of Batteiger (individually and as administrator of the estate), Mary Jo, and Peter, appellant filed a declaratory judgment action against Allstate Insurance Company (Batteiger's insurer) and Motorists Mutual Insurance Company (Mary Jo's insurer), to determine coverage under both policies as a result of the wrongful death of Sarah Ann. The pleading referred to the wrongful death statute, R.C. Chapter 2125. Peter and Sarah Ann were both insureds under the Allstate and Motorists policies; Batteiger was not an insured *Page 3 
under the Motorists policy, and Mary Jo was not an insured under the Allstate policy.
 {¶ 5} Subsequently, against the advice of appellant, Batteiger settled with Allstate. Appellant filed that settlement with the probate court and in January 2000, received approval to distribute the funds. Even though Mary Jo was not an insured under the Allstate policy, the funds were distributed between Batteiger, Mary Jo, and Peter. In January 2000, appellant was allowed to withdraw as "counsel of record for Plaintiff David Batteiger" by the Miami County Common Pleas Court.
 {¶ 6} In December 2000, on behalf of Batteiger (individually and as administrator of the estate), Mary Jo, and Peter, appellant filed an amended complaint, adding USF G (the insurer of Mary Jo's employer) as a defendant. A second amended complaint was filed in June 2001. The complaints alleged that Sarah Ann was an insured under the USF G policy. Both pleadings referred to Sarah Ann's wrongful death and the wrongful death statute. USF G moved for summary judgment, which was granted by the Miami County Common Pleas Court. In February 2002, we reversed the grant of summary judgment in favor of USF G.Batteiger v. Allstate Ins. Co., Miami App. No. 2001 CA 37, 2002-Ohio-909. We found that because the definition of an "insured" under the USF G policy included Mary Jo, it included Sarah Ann as her family member and thus, Sarah Ann was an insured under the policy. We further found that "Sarah Ann's estate [was] entitled to recover under the uninsured motorist coverage provisions of Grandview's insurance policy with USF G." Unabated, USF G again moved for summary judgment which was again granted. Appellant filed an appeal with this court. *Page 4 
 {¶ 7} In December 2002, while the appeal and all claims were pending, appellant reached a $400,000 settlement with USF G. Appellant did not consult with Batteiger, did not inform the probate court of the settlement, did not file the settlement in the probate court, and did not seek the approval of the probate court before distributing the funds. Based upon his opinion that Mary Jo and Peter were the only insureds under the USF G policy (which was contrary to our holding inBatteiger), appellant distributed the funds between Mary Jo, Peter, and himself. He then moved to dismiss his appeal against USF G.
 {¶ 8} Concurrently, appellant also reached a settlement with Motorists in the amount of $42,500. At the request of Motorists, the settlement was filed with the probate court. Without notifying Batteiger, appellant filed a narrative with the probate court requesting that the settlement only be distributed to Mary Jo and Peter, because Batteiger was not an insured under the Motorists policy. The probate court, following appellant's recommendation set forth in his narrative, ordered that the settlement only be distributed to Mary Jo and Peter. In December 2003, appellant was allowed to withdraw "as counsel" by the probate court. Appellant's motion to withdraw filed in the probate court stated that since appellant had been dismissed as counsel by "David A. Batteiger," appellant could not continue to represent the estate.
 {¶ 9} On January 9, 2004, Batteiger, individually and as the administrator of the estate, filed a legal malpractice complaint against appellant. Both parties subsequently moved for summary judgment. On December 30, 2004, the trial court granted Batteiger's motion for summary judgment. The trial court found that (1) the USF G claims were wrongful death claims under R.C. Chapter 2125; (2) appellant *Page 5 
breached his duty to Batteiger and the estate by failing to notify and obtain approval of the probate court with regard to the $400,000 settlement with USF G; and (3) as a result of appellant's breach of duty, appellant caused damages as neither Batteiger nor the estate received anything from the settlement with USF G.
 {¶ 10} Appellant filed an appeal with this court. On November 2, 2005, we dismissed the appeal for lack of jurisdiction. Specifically, we held that because the trial court did not determine the amount of damages, the notice of appeal did not arise from a final appealable order. In September 2006, Batteiger, individually and as the administrator of the estate, moved for summary judgment on the issue of damages. Appellant, in turn, filed a memorandum contra Batteiger's motion and a motion for summary judgment, as well as a second motion for summary judgment.
 {¶ 11} On November 6, 2006, the trial court granted Batteiger's motion for summary judgment as follows:
 {¶ 12} "This Court previously held in its [December 30, 2004] Decision that this was a wrong death action which must be brought pursuant to R.C. 2125 et seq. This action must be brought in the name of the Estate and the approval of the settlement for the distribution of the proceeds must be approved by the appropriate Probate Court. It is unrefuted that the Defendants received $400,000 from USF G without the knowledge of the [probate court]. Defendant Deutsch took control of those funds and distributed those funds to himself, Mary Jo and Peter Batteiger without the consent of the representative of the Estate or the [probate court]. This Court finds, therefore, that the Estate is specifically damaged in the amount of $400,000.
 {¶ 13} "* * * *Page 6 
 {¶ 14} "As this Court has ruled, this was a wrongful death action and any settlement received by Defendant Deutsch was the property of the Estate of Sarah Ann Batteiger, pursuant to [R.C.] 2125 et seq., and the Rules of Superintendence for the Courts of Ohio, 70 and 71. Defendants had a duty to inform the [probate court] of the settlement, obtain approval of the settlement, obtain approval of any request for attorney fees, and final approval of any settlement distribution. The Defendants, however, failed to obtain approval for the settlement with USF G, failed to notify the [probate court] of the settlement, failed to obtain approval for attorney fees and failed to obtain approval with respect to the distribution to the beneficiaries of the Estate.
 {¶ 15} "As was also previously noted when the USF G matter went to the Second District Court of Appeals, that Court specifically held that the ` . . . estate had the right to recover from USF G.' [citation omitted] Based upon this decision, any settlement received by the Defendants is the property of the Estate, not the property of the Defendants nor the property of any individual beneficiaries and may not be distributed without the specific authorization of the appropriate Probate Court, which is Miami County Court of Common Pleas, Probate Division.
 {¶ 16} "Defendant Deutsch took control of these funds, took a portion of the fees for himself and then distributed the remainder between the mother and brother of the decedent. This was in violation of Ohio law, the Rules of Superintendence, and the Decision of the Court of Appeals. As a result, the Defendants owe to the Estate $400,000.
 {¶ 17} "* * *
 {¶ 18} "These wrongful death monies are not the property of Plaintiff Batteiger. *Page 7 
They are the property of the Estate. As such, this Court ORDERS that Defendant Deutsch return to the Estate $400,000. Plaintiff Batteiger will then be required to notify the [probate court] and request that appropriate attorney fees be awarded and that there be a lawful distribution of those funds."
 {¶ 19} This appeal follows in which appellant raises four assignments of error.
 {¶ 20} Assignment of Error No. 1:
 {¶ 21} "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO APPELLEE DAVID BATTEIGER AS HE WAS NOT AN INSURED AND HAD NO INSURABLE INTEREST IN THE USF G POLICY AT ISSUE."
 {¶ 22} This court conducts a de novo review of a trial court's decision on summary judgment. Burgess v. Tackas (1998),125 Ohio App.3d 294, 296. A court may grant summary judgment only when: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence submitted that reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed most strongly in his favor. Civ.R. 56(C);Welco Indus., Inc. v. Applied Cos., 67 Ohio St.3d 344, 346,1993-Ohio-191.
 {¶ 23} Appellant argues that the trial court erred by granting Batteiger's motion for summary judgment on the issue of liability because although a wrongful death statutory beneficiary, Batteiger was not an insured under the USF G policy. In support of his argument, appellant cites Wood v. Shepard (1988), 38 Ohio St.3d 86, and Wright v.Grange Mut. Cas. Co. (June 27, 1995), Coshocton App. No. 94-CA-18, for the proposition that only an insured under the underinsured/uninsured motorist *Page 8 
provision of a policy can recover under the policy for wrongful death.
 {¶ 24} However, in its decision granting Batteiger's motion for summary judgment on the issue of liability, the trial court specifically found that Batteiger was not an insured under the USF G policy:
 {¶ 25} "The Defendant contends that summary judgment should be granted because of Plaintiff's lack of an insurable interest in the insurance polic[y] at issue in this litigation. Specifically, Defendant argues that `Plaintiff has no insurable interest in the * * * USF G polic[y], being polic[y] for his ex-wife, for which he was not an insured.' Defendants' analysis is flawed and misplaced. The issue is not whether Plaintiff was an insured under the subject polic[y]. Clearly he was not. But, it was his deceased daughter, Sarah Ann Batteiger, who was the `insured' under the * * * USF G policy after applying theScott-Pontzer analysis. The fact that Plaintiff was not an insured under the polic[y] and did not have an insurable interest is immaterial. It is the interest of the decedent (Sarah Ann Batteiger) that determines the outcome of this case. As such, Plaintiff, in his capacity as administrator of his daughter's estate, had a fiduciary duty to bring the wrongful death action pursuant to [R.C.] 2125.02 et seq., to assert his daughter's interest in the [policy], collect any applicable proceeds and thereafter to distribute the same to the statutory beneficiaries, himself included, along with his ex-wife and son."
 {¶ 26} The trial court then went on to find that appellant had breached his duty to Batteiger and the estate (and any next of kin who suffered damages by reason of the wrongful death of Sarah Ann) "by failing to properly notice the hearing on the settlement, distribution and dismissal of wrongful death claims' proceeds." Further, the *Page 9 
trial court "specifically [found] that the * * * USF G claims were wrongful death claims within the meaning of the wrongful death statute, [R.C.] 2125.01 et seq., and as such, the Defendants have also breached their duty to the Plaintiff Batteiger by failing to inform the [probate court] of the settlement with USF G, by not obtaining the probate court's approval of said settlement and distribution of the funds." The trial court found that appellant committed legal malpractice and that the malpractice caused damages as neither Batteiger nor the estate received any proceeds of the USF G settlement.
 {¶ 27} We note that appellant's first assignment of error is directed only to Batteiger as an individual. However, the trial court did not grant judgment to Batteiger as an individual, it granted judgment to the estate. As noted earlier, we found in 2002 that Sarah Ann was an insured under the USF G policy and that as a result, her estate was entitled to recover under the uninsured motorist coverage provisions of the policy. Batteiger, 2002-Ohio-909. Our decision was the result of an appeal, filed by appellant, from the Miami County Common Pleas Court's grant of summary judgment in favor of USF G, after appellant had filed, on behalf of Batteiger (individually and as administrator of the estate), Mary Jo, and Peter, an amended complaint and a second amended complaint, to add USF G as a defendant. The complaints alleged that Sarah Ann was an insured under the USF G policy. Both pleadings referred to Sarah Ann's wrongful death and the wrongful death statute. We further note that appellant never challenged our decision that Sarah Ann was an insured and that her estate could recover under the USF G policy, and in fact, completely ignores this finding in this appeal (indeed, appellant repeatedly asserts that Mary Jo and Peter are the only two insureds under the policy). *Page 10 
 {¶ 28} In light of the foregoing, we find that the trial court did not err when it granted Batteiger's motion for summary judgment on the issue of liability. Appellant's first assignment of error is overruled.
 {¶ 29} Assignment of Error No. 2:
 {¶ 30} "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO APPELLEE DAVID BATTEIGER AND THE ESTATE OF SARAH ANN BATTEIGER ON THE ISSUE OF DAMAGES."
 {¶ 31} Appellant argues that the trial court erred by granting Batteiger's motion for summary judgment on the issue of damages because (1) Batteiger "failed to present sufficient and affirmative Civ.R. 56 evidence to prove * * * there was proximate cause of actual damages because of a breach of a duty of care;" (2) Batteiger, in his individual capacity, was not an insured under the USF G policy and therefore could not recover; (3) the estate suffered no damages because it did not have a claim against USF G, and only Mary Jo and Peter qualified as insureds under the USF G policy; and (4) the trial court failed to explain how the estate was damaged in the amount of $400,000.
 {¶ 32} Once again, we point out that (1) the trial court very clearly found that Batteiger, in his individual capacity, was not an insured under the USF G policy; and (2) we specifically found that Sarah Ann was an insured under the USF G policy, and thus her estate was entitled to recover under the policy. See Batteiger, 2002-Ohio-909.
 {¶ 33} The trial court also found, and the record supports its finding, that although Batteiger moved for summary judgment specifically on the issue of damages *Page 11 
resulting from appellant's legal malpractice, appellant failed to respond to Batteiger's argument regarding these damages. Appellant certainly never argued that Batteiger failed to present sufficient and affirmative Civ.R. 56 evidence, or that the estate suffered no damages because it did not have a claim against USF G. What appellant did argue in his first and second motions for summary judgment was that Batteiger personally suffered no damages because he was not an insured under the USF G policy; and that Mary Jo and Peter were the only two wrongful death beneficiaries qualifying as insureds under the policy. In other words, arguments raised by appellant in his summary judgment pleadings addressed the issue of liability, not the issue of the estate's damages.
 {¶ 34} It is well-established that a litigant's failure to raise an issue in the trial court waives the litigant's right to raise that issue on appeal. Wysong v. Jo-Ann Stores, Inc., Montgomery App. No. 21412,2006-Ohio-4644, ¶ 27-28; Coleman v. Korrect Plumbing, Inc., Montgomery App. No. 21355, 2006-Ohio-1579; Patton v. Ditmyer, Athens App. Nos. 05CA12, 05CA21, and 05CA22, 2006-Ohio-7107. Here, appellant argues for the first time on appeal that Batteiger "failed to present sufficient and affirmative Civ.R. 56 evidence" and that the estate suffered no damages because it did not have a claim against USF G. Because appellant did not raise these arguments before the trial court, he has waived them and we decline to consider them.
 {¶ 35} It follows that the only argument we will consider under this assignment of error is appellant's claim that the trial court failed to explain how the estate was damaged in the amount of $400,000. The following excerpts from the trial court's decision refutes appellant's argument: *Page 12 
 {¶ 36} "Eventually, the Defendants filed First and Second Amended Complaints for Wrongful Death and brought in [USF G] along with Motorist Mutual. The Defendants alleged that [Sarah Ann] was insured under a commercial insurance policy with USF G. Defendant Deutsch further admitted with respect to both the First and Second Amended Complaint that he named Plaintiff Batteiger individually and as the Administrator of the Estate and prayed for damages on his behalf from all * * * insurance companies. * * *
 {¶ 37} "While all claims were pending, Defendant Deutsch negotiated a settlement with USF G in the amount of $400,000. * * * Defendant argues that * * * the Plaintiffs are not entitled to any recovery of these wrongful death benefits because they were not insureds under the USF G policy. But, Defendant fails to acknowledge that this decision was not for him to make, but rather that of the [probate court], after due notice and hearing on the settlement distributions.
 {¶ 38} "* * *
 {¶ 39} "This Court previously held in its [December 30, 2004] Decision that this was a wrongful death action which must be brought pursuant to R.C. 2125 et seq. This action must be brought in the name of the Estate and the approval of the settlement for the distribution of the proceeds must be approved by the appropriate Probate Court. It is unrefuted that the Defendants received $400,000 from USF G without the knowledge of the [probate court]. Defendant Deutsch took control of those funds and distributed those funds to himself, Mary Jo and Peter Batteiger without the consent of the representative of the Estate or the [probate court]. This Court finds, therefore, that the Estate is specifically damaged in the amount of $400,000. *Page 13 
 {¶ 40} "* * *
 {¶ 41} "As was also previously noted when the USF G matter went to the Second District Court of Appeals, that Court specifically held that the ` . . . estate had the right to recover from USF G.' [citation omitted] Based upon this decision, any settlement received by the Defendants is the property of the Estate, not the property of the Defendants nor the property of any individual beneficiaries and may not be distributed without the specific authorization of the appropriate Probate Court, which is Miami County Court of Common Pleas, Probate Division.
 {¶ 42} "Defendant Deutsch took control of these funds, took a portion of the fees for himself and then distributed the remainder between the mother and brother of the decedent. This was in violation of Ohio law, the Rules of Superintendence, and the Decision of the Court of Appeals. As a result, the Defendants owe to the Estate $400,000.
 {¶ 43} "* * *
 {¶ 44} "These wrongful death monies are not the property of Plaintiff Batteiger. They are the property of the Estate."
 {¶ 45} Appellant's second assignment of error is accordingly overruled.
 {¶ 46} Assignment of Error No. 3:
 {¶ 47} "THE TRIAL COURT EXCEEDED ITS JURISDICTION IN DETERMINING DAMAGES IF THE UNDERLYING CLAIM WERE INDEED FOR WRONGFUL DEATH, AS THAT WOULD BE THE PROVINCE OF THE PROBATE COURT." *Page 14 
 {¶ 48} Appellant argues that the trial court exceeded its jurisdiction when it addressed the issue of damages after granting Batteiger's motion for summary judgment on the issue of appellant's liability. Appellant asserts that if the trial court is correct that the claims against USF G were wrongful death claims that should have been brought in the name of the estate, then the matter should have been transferred to the probate court for a determination on the issue of damages.
 {¶ 49} Batteiger points out that because appellant failed to raise the issue of the trial court's lack of jurisdiction either in his answer to the legal malpractice complaint or in his summary judgment motions, appellant has waived the right to raise this issue on appeal. We disagree. The defense of lack of subject matter jurisdiction can never be waived and may effectively be made for the first time on appeal.B-Dry System, Inc. v. Kronenthal (June 30, 1999), Montgomery App. Nos. 17130 and 17619, 1999 WL 961248, at *6, citing Time Warner AxS v. Pub.Util. Comm., 75 Ohio St.3d 229, 1996-Ohio-224, and Jenkins v.Keller (1966), 6 Ohio St.2d 122; Green v. State Bd. of Registration forProfessional Engineers Surveyors, Greene App. No. 05CA121,2006-Ohio-1581.
 {¶ 50} Subject matter jurisdiction of a court "connotes the power to hear and decide a case upon its merits." In re J.J., 111 Ohio St.3d 205,2006-Ohio-5484, ¶ 11. "A court's subject matter jurisdiction is invoked by the filing of a complaint. Once a court of competent jurisdiction acquires jurisdiction over an action, its authority continues until the matter is completely and finally disposed of, and no court of coordinate jurisdiction may interfere with its proceedings." B-Dry System, Montgomery App. Nos. 17130 and 17619, at *6 (internal citations omitted). *Page 15 
 {¶ 51} A probate court is a court of limited jurisdiction. As such, its jurisdiction is limited to only those matters conferred by statute and the Ohio Constitution. Buckman-Peirson v. Brannon,159 Ohio App.3d 12, 2004-Ohio-6074, ¶ 11. Pursuant to R.C. 2101.24, a probate court has jurisdiction in probate and testamentary matters, the appointment of administrators, and the settlement of accounts of executors and administrators. Legal malpractice claims are not listed in R.C. 2101.24. Id. at ¶ 12. Under R.C. Chapter 2125, the wrongful death statute, a probate court has exclusive jurisdiction to approve settlements in actions for wrongful death and to order distribution of the settlement proceeds. Comer v. Bench, Montgomery App. No. 19229, 2003-Ohio-2821, ¶ 15.
 {¶ 52} Turning to appellant's argument, we note at the outset that appellant has not cited any case law in support of it. His argument asserts that assuming the claims against USF G were wrongful death claims, the probate court has jurisdiction over the issue of damages because a probate court has exclusive jurisdiction over the settlement of wrongful death claims. Of course, the $400,000 USF G settlement reached by appellant was never probated in or approved by the probate court. Appellant's argument also ignores the fact that the case at bar is predicated on Batteiger's filing of a legal malpractice complaint against appellant. In Buckman-Peirson, we held that a common pleas court, rather than a probate court, has exclusive jurisdiction over a client's legal malpractice claim against his attorney relating to the settlement of the client's wrongful death action:
 {¶ 53} "[Unlike in Comer, 2003-Ohio-2821, where the suit] was not for legal malpractice or for breach of contract, but instead sought to reopen and undo the *Page 16 
settlement of the wrongful-death-suit[,] [i]n this case, in contrast, [the client] did not seek to reopen or undo the settlement agreement approved by the probate court for her wrongful-death suit. She sued her attorney for what she claimed was substandard representation and breach of contract. These claims developed out of the wrongful-death suit, but were distinct claims that involved separate legal issues. * * * The relevant consideration is that * * * the cause of action actually at issue, and for which jurisdiction was being determined, was malpractice. It is irrelevant what initial or underlying cause of action the lawyer in question allegedly mishandled. A suit for malpractice or breach of contract is properly in common pleas court." Buckman-Peirson,159 Ohio App.3d 12, ¶ 16, 17, and 22.
 {¶ 54} In the case at bar, once Batteiger properly filed his legal malpractice complaint in the trial court, the court acquired jurisdiction over the action and its authority continued until the matter was completely and finally disposed of. See B-Dry System. Thus, once the trial court found that appellant was liable, it was required to determine the issue of damages. See id. It follows that the trial court did not err or exceed its jurisdiction when it determined the issue of damages. Appellant's third assignment of error is overruled.
 {¶ 55} Assignment of Error No. 4:
 {¶ 56} "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO APPELLEES AS THEIR CLAIMS WERE BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS."
 {¶ 57} Appellant argues that the trial court erred by granting Batteiger's motion for summary judgment because his legal malpractice complaint was barred by the one-year *Page 17 
statute of limitations under R.C. 2305.11(A).
 {¶ 58} The record shows that after Batteiger filed his legal malpractice complaint, appellant moved for summary judgment on the ground, inter alia, that the claim was barred by the one-year statute of limitations under R.C. 2305.11(A). In its December 30, 2004 decision granting Batteiger's motion for summary judgment on the issue of appellant's liability, the trial court found that the legal malpractice claim was not barred by the statute of limitations and was instead timely filed, stating: "The Defendants continued in their representation of the Estate by pursuing the wrongful death claims although failing to do so pursuant to statute."
 {¶ 59} Appellant appealed the trial court's December 30, 2004 decision, but on November 2, 2005, we dismissed the appeal for lack of jurisdiction. Batteiger subsequently moved for summary judgment on the issue of damages, and appellant again moved for summary judgment on the ground, inter alia, that the legal malpractice claim was barred under R.C. 2305.11(A). On November 6, 2006, the trial court granted Batteiger's motion for summary judgment on the issue of damages, without addressing appellant's statute of limitations argument.
 {¶ 60} Actions alleging legal malpractice must be commenced within one year after the cause of action accrues. R.C. 2305.11(A). An action for legal malpractice accrues and the statute of limitations begins to run "when there is a cognizable event whereby the client discovers or should have discovered that his injury was related to his attorney's act or non-act and the client is put on notice of a need to pursue his possible remedies against the attorney, or when the attorney-client relationship for that particular transaction or undertaking terminates, whichever occurs later." Zimmie v. *Page 18 Calfee, Halter and Griswold (1989), 43 Ohio St.3d 54, 58. The date of termination of the attorney-client relationship for purposes of R.C.2305.11 is determined by the actions of the parties. Smith v.Conley, 109 Ohio St.3d 141, 2006-Ohio-2035, ¶ 12.
 {¶ 61} The client need not be aware of the full extent of the injury before there is a cognizable event triggering the statute of limitations in a legal malpractice action. Zimmie at 58. Instead, it is enough that some noteworthy event, the cognizable event, has occurred which does or should alert a reasonable person that a questionable legal practice may have occurred. Id. Consulting with an attorney itself indicates a cognizable event. Griggs v. Bookwalter, Montgomery App. No. 21220,2006-Ohio-5392, ¶ 20.
 {¶ 62} As noted earlier, Batteiger, both individually and as the administrator of his daughter's estate, retained appellant as his attorney with regard to Sarah Ann's death. Appellant subsequently also represented Mary Jo and Peter, both individually. In September 1999, on behalf of Batteiger (individually and as administrator of the estate), Mary Jo, and Peter, appellant filed a declaratory judgment action against Allstate (Batteiger's insurer) and Motorists (Mary Jo's insurer), to determine coverage under both policies as a result of the wrongful death of Sarah Ann. In November 1999, unhappy with Batteiger's intention to settle with Allstate, appellant filed a motion to withdraw as counsel in the Miami County Common Pleas Court. Although a hearing on the motion was scheduled for January 18, 2000, the Miami County Common Pleas Court allowed appellant to withdraw "as counsel of record for Plaintiff David Batteiger" on January 12, 2000 and without a hearing.
 {¶ 63} Batteiger testified that although appellant was no longer representing him *Page 19 
individually, he believed that (1) the termination of the attorney-client relationship only involved the Allstate matter; (2) appellant continued to represent the estate, and (3) as the administrator of the estate, he (Batteiger) would be involved and consulted with regard to insurance claims relating to Sarah Ann's death. Throughout the proceedings, appellant never told Batteiger to consult another attorney. Batteiger also testified that on the day the Allstate settlement was approved in the probate court (in January 2000), Batteiger was not sure whether there were other insurance companies to pursue on behalf of the estate, and that when asked, appellant told him he did not know.
 {¶ 64} Appellant, in turn, testified that when he filed his motion to withdraw, he intended to withdraw both as the attorney for Batteiger individually and as the attorney for the estate. Yet, in December 2000 and June 2001, appellant filed amended complaints in the Miami County Common Pleas Court, adding USF G (the insurer of Mary Jo's employer) as a defendant. Both complaints were filed on behalf of Mary Jo, Peter,and Batteiger (individually and as administrator of the estate); included a prayer for damages on behalf of Batteiger, individually and as administrator of the estate; and were signed by appellant as "Attorney for Plaintiff." Appellant later claimed that naming Batteiger as a plaintiff in the amended complaints was a mistake; yet, appellant never moved to withdraw Batteiger as a party and never informed Batteiger of the alleged mistake. Batteiger was never served with the amended complaints, never received any pleadings or mailings from the Miami County Common Pleas Court regarding the lawsuit against USF G, and did not find out about the complaints until late January 2003 after he consulted with an attorney. Likewise, Batteiger did not find *Page 20 
out about our February 2002 holding that Sarah Ann's estate was entitled to recover under the USF G policy until late January 2003.[2]
 {¶ 65} In December 2002, appellant reached a $400,000 settlement with USF G and a $42,500 settlement with Motorists. Around December 11, 2002, Mary Jo told Batteiger that she was going to settle but that it was not for very much and that his presence was required in appellant's office to sign some paperwork. On December 13, 2002, Batteiger went to appellant's office where he was asked to sign several documents which he did not read and which were not explained to him. According to Batteiger, appellant informed him that he (appellant) had received $42,500 from Motorists and would receive an additional check for $400,000. The source of the additional check was not explained to Batteiger who presumed it was an additional settlement with Motorists. Later that day, Peter informed Batteiger that he (Batteiger) would not receive any money from the settlement.
 {¶ 66} As noted earlier, with regard to the USF G settlement, appellant did not consult with Batteiger, did not inform the probate court of the settlement, did not file the settlement in the probate court, and did not seek the approval of the probate court before distributing the funds between Mary Jo, Peter, and himself. It was not until a few days after Batteiger contacted an attorney on January 21, 2003 to inquire as to the status of the wrongful death action filed on behalf of the estate by appellant, that Batteiger learned about the existence of USF G and the lawsuit filed by appellant against USF G. Up until then, Batteiger "had no idea" what was going on with *Page 21 
USF G and "did not even know" who they were. Batteiger testified he did not know on December 13, 2002 that there were claims against USF G.
 {¶ 67} In his deposition, appellant stated that Batteiger knew the terms of the USF G settlement because that is what Mary Jo and Peter told appellant. Appellant also stated that Batteiger learned about the USF G settlement sometime between December 2002 and February 2003 when the funds were distributed. Appellant could not recall whether he had personally informed Batteiger of the USF G settlement or that he would not receive any money from the settlement.
 {¶ 68} At the request of Motorists, the settlement with Motorists was filed with the probate court. Without notifying Batteiger, appellant filed a narrative with the probate court requesting that the settlement only be distributed to Mary Jo and Peter. The narrative is signed by appellant "Attorney for [Batteiger], Mary Jo and Peter." A settlement distribution form filed in the probate court by appellant is signed by Batteiger as "Fiduciary" and the administrator of the estate, and by appellant as the "Attorney for Fiduciary." The record indicates that appellant received a check from Motorists on January 6, 2003, and that Batteiger signed the settlement on January 9, 2003.
 {¶ 69} In his affidavit, and after referring to the settlements with USF G and Motorists, appellant stated that "to facilitate the settlement," and because Batteiger was still the administrator of the estate, Batteiger came to his office on December 13, 2002 "to sign documents for the purpose of seeking Probate approval." It is not clear whether this statement refers to both settlements. In December 2003, more than two years after appellant allegedly moved to withdraw as counsel as both the attorney for *Page 22 
Batteiger and the attorney for the estate in the Miami County Common Pleas Court, appellant moved to withdraw "as counsel of record" in the probate court. Appellant asserted that since he had been dismissed "as counsel by David A. Batteiger[,] he [could not] continue to represent the estate." His motion was granted on December 17, 2003.
 {¶ 70} Batteiger filed his legal malpractice complaint against appellant on January 9, 2004. Notwithstanding appellant's claim he intended to withdraw as the attorney for the estate when he filed his motion to withdraw in 1999, we find that appellant's representation of the estate terminated on December 17, 2003 when appellant was allowed to withdraw as counsel for the estate by the probate court. We further find that in light of appellant's action of filing and signing pleadings on behalf of Batteiger individually after the Miami County Common Pleas Court granted his motion to withdraw as counsel for Batteiger in January 2000, appellant's representation of Batteiger in his individual capacity did not terminate in January 2000. See Conley, 109 Ohio St.3d 141,2006-Ohio-2035, ¶ 12 (date of termination of the attorney-client relationship for purposes of R.C. 2305.11 is determined by the actions of the parties).
 {¶ 71} A thorough review of the record, and in particular the parties' depositions and affidavits, indicates that when he came to sign paperwork in appellant's office on December 13, 2002, Batteiger did not know about the amended complaints filed by appellant against USF G; did not know about our 2002 holding that the estate was entitled to recover under the USF G policy; was not informed where the additional $400,000 check came from and presumed it was an additional settlement with Motorists; did not know there were claims against USF G; and did not learn about *Page 23 
USF G until a few days after January 21, 2003 when Batteiger contacted an attorney to inquire as to the status of the wrongful death action filed on behalf of the estate by appellant. Thus, we find that the cognizable event regarding the USF G settlement was not December 13, 2002, but rather January 21, 2003 when Batteiger consulted an attorney to inquire as to the status of the wrongful death action filed on behalf of the estate. See Griggs, 2006-Ohio-5392, ¶ 20 (consulting with an attorney itself indicates a cognizable event).
 {¶ 72} We therefore find that Batteiger's legal malpractice was filed within the one-year statute of limitations under R.C. 2305.11(A). Appellant's fourth assignment of error is overruled.
 {¶ 73} Judgment affirmed.
BRESSLER and POWELL, JJ., concur.
[1] The legal malpractice action was filed against David Deutsch and David M. Deutsch Co. LPA. For purpose of this appeal, we will refer to David Deutsch and his law firm collectively as "appellant."
[2] Again, the record shows that when appellant appealed the Miami County Common Pleas Court's grant of summary judgment in favor of USF G to this court, his appellate brief, which was signed as "Attorney for Plaintiff referred to Batteiger, Mary Jo, and Peter as plaintiffs. *Page 1