[Cite as *Cain v. Panitch*, 2018-Ohio-1595.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| J. Richard Cain et al., | : | |
| Plaintiffs-Appellants, | : | No. 16AP-758 |
| | | (Prob. No. 502785A) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Harry F. Panitch et al., | : | |
| Defendants-Appellees. | : | |

## D E C I S I O N

### Rendered on April 24, 2018

**On brief**: *Morganstern, MacAdams & DeVito Co., L.P.A.*, and *Christopher M. DeVito*, for appellants. **Argued**: *Christopher M. DeVito*.

**On brief**: *Kendo Dulaney LLP*, and *Andrew M. Engel*; *William H. Dulaney, III*, for appellees Harry F. Panitch, Individually and as Executor of the Estate of Ruth Freed. **Argued**: *Andrew M. Engel*.

**On brief**: *Bryan & Brewer, LLC*, and *Jonathan M. Bryan*, for appellee Ohio Casualty Insurance Company. **Argued**: *Jonathan M. Bryan*.

APPEAL from the Franklin County Court of Common Pleas, Probate Division

BROWN, P.J.

{¶ 1} This is an appeal by plaintiffs-appellants, J. Richard Cain (individually "Cain"), Cheryl Lewandowski (individually "Lewandowski"), and the Estate of Roy Greenawalt (individually "the Greenawalt Estate"), from a judgment of the Franklin County Court of Common Pleas, Probate Division ("the probate court"), denying appellants' motion for summary judgment and granting summary judgment in favor of

defendants-appellees, Harry F. Panitch (individually "Panitch"), the Estate of Ruth Freed (individually "the Freed Estate"), and Ohio Casualty Insurance Company (individually "OCI").

{¶ 2} The following background facts, essentially not in dispute, are drawn primarily from the probate court's summary judgment decision. Roy Greenawalt (hereafter "the decedent"), died testate on May 1, 2004. The decedent's will named William A Bricker ("Bricker") as the beneficiary of the decedent's estate. In the event Bricker predeceased the decedent, the entirety of the decedent's estate was to pass to the decedent's sister, Ruth Cain (hereafter "Ruth Cain"), based on the following directive:

> Second, I give, devise, and bequeath all my personal property to WILLIAM A. BRICKER of Reynoldsburg, Ohio 43068.
>
> Third: Should WILLIAM A. BRICKER, predecease me, or should he and I be deceased in a common accident, I give, devise, and bequeath my entire estate to my sister, RUTH CAIN, of Mount Pleasant, Pennsylvania.

(Oct. 31, 2016 Decision & Entry at 3.)

{¶ 3} Bricker, who was unrelated to the decedent, predeceased both the decedent and Ruth Cain. The decedent's sibling, Ruth Cain, also predeceased the decedent. The decedent's next of kin were ten nieces and nephews, including appellants Cain and Lewandowski (the children of Ruth Cain).

{¶ 4} On May 26, 2004, the decedent's estate was opened. Attorney Ruth Freed ("Freed") applied to be administrator of the decedent's estate; Freed's son, Panitch, an attorney employed by Freed's law firm, signed as her attorney for the estate.

{¶ 5} On June 7, 2004, Freed was appointed administrator of the decedent's estate. The original bond on the estate was set at $600,000, which Freed posted from OCI. Subsequent to an inventory filed October 12, 2004, an additional bond in the amount of $589,000 was posted for a total of $1,189,000 (as assets totaled approximately $700,000 for the estate).

{¶ 6} The estate filings included a "Waiver of Notice of Probate of Will from all ten nieces and nephews, including * * * Cain and * * * Lewandowski, filed on August 2, 2004." The probate court noted that Cain and Lewandowski "were aware of the administration of the estate" based on conversations with Freed (during the pendency of

the action), as well as from written correspondence by both Freed and Panitch regarding the estate. The probate court cited a letter from Panitch to Cain and Lewandowski, dated May 12, 2005, in which Panitch indicated the estate would be divided among the ten nieces and nephews of the decedent according to the statute of descent and distribution because the named beneficiaries in the will had both predeceased the decedent.

{¶ 7} On August 26, 2005, Freed filed a first account for the decedent's estate, indicating disbursements to beneficiaries in the amount of $572,662.60, representing ten shares of $57,266.26 distributed to each of the ten nieces and nephews of the decedent. On September 29, 2005, an entry was filed reducing the bond amount from $1,189,000 to $3,000.

{¶ 8} The probate court entered an order setting a hearing on the first account, and Cain and Lewandowski were served with notice of the hearing. No objections were filed to the first hearing, and the probate court filed an entry on October 11, 2005 approving and setting estate accounts for the first account.

{¶ 9} Cain and Lewandowski, as well as the decedent's other nieces and nephews, consented to both the fiduciary fees and attorney fees. Specifically, on November 17, 2004, a "consent to attorney fee" form was filed providing for payment of fiduciary fees to Freed in the amount of $15,000, and for attorney fees to Panitch in the amount of $10,000; further, on May 31, 2005, a consent to attorney fee form was filed providing for payment of fiduciary fees to Freed in the amount of $25,000, and attorney fees to Panitch in the amount of $43,500.

{¶ 10} On December 16, 2005, Freed filed the final account; Cain and Lewandowski were served with the final account, and they both received an additional distribution of $881.14. The probate court set a hearing date on the final account, and no objections were filed. On January 30, 2006, the probate court filed an entry approving the final account.

{¶ 11} On September 5, 2013, Freed passed away. The Freed Estate was opened on September 10, 2013, and Panitch was appointed executor of her estate.

{¶ 12} Approximately one year after Freed's death, attorney Timothy Howard discovered $106,838.40 in the name of Roy Greenawalt in the Ohio Division of Unclaimed Funds. Howard contacted Cain and Lewandowski in an attempt to collect the

funds on their behalf based on Howard's understanding that Cain and Lewandowski, as the issue of Ruth Cain, were the proper beneficiaries of the estate; it was at that time Cain and Lewandowski received information indicating the new assets would be distributed differently than the original assets of the decedent's estate.

{¶ 13} On July 28, 2015, appellants filed a complaint in the probate court against appellees, alleging causes of action for breach of fiduciary duty, negligence, conversion, legal malpractice, fraud, and surcharge. The remaining eight nieces and nephews of the decedent who received distributions from the decedent's estate were not named as parties, nor were any of those individuals joined as a party.

{¶ 14} On December 10, 2015, the probate court conducted a hearing regarding next of kin status for purposes of the unclaimed fund assets. The decedent's remaining nieces and nephews (i.e., other than Cain and Lewandowski) either failed to make an appearance or elected not to participate. By order filed January 8, 2016, the magistrate ratified "all orders made since February 20, 2015," and further determined that Cain and Lewandowski "are proper next of kin for the purpose of the distribution of newly discovered assets."

{¶ 15} On June 16, 2016, appellants filed a motion for partial summary judgment. On July 1, 2016, appellees Panitch and the Freed Estate filed a memorandum contra appellants' motion for partial summary judgment, and also filed a cross-motion for summary judgment. On July 15, 2016, appellants filed a reply in support of partial summary judgment, and a response in opposition to the cross-motion for summary judgment. On July 19, 2016, OCI filed a motion for summary judgment, as well as a memorandum in opposition to appellants' motion for partial summary judgment. On August 9, 2016, appellants filed a response in opposition to OCI's motion for summary judgment.

{¶ 16} On October 31, 2016, the probate court filed a decision and entry denying appellants' motion for summary judgment, granting the cross-motion for summary judgment of Panitch and the Freed Estate, and also granting OCI's motion for summary judgment. In its decision, the probate court held in part that it lacked subject-matter jurisdiction over appellants' claim for legal malpractice, and that appellants' claims for

breach of fiduciary duty, negligence, conversion, and fraud were barred by the applicable statutes of limitations.

{¶ 17} On appeal, appellants set forth the following four assignments of error for this court's review:

> [I.] The trial court erred as matter of law holding that a probate court lacks subject matter jurisdiction of a legal malpractice claim.
>
> [II.] The Probate Judge erred as a matter of law applying the statute of limitations; alternatively, questions of fact exist preventing summary judgment.
>
> [III.] The Probate Judge erred as a matter of law by not applying the statute of limitations applicable to a surcharge action, R.C. 2305.12.
>
> [IV.] The Probate Judge erred as a matter of law and ignored uncontroverted facts by failing to grant Appellants' Motion for Partial Summary Judgment.

{¶ 18} Under the first assignment of error, appellants assert the trial court erred as a matter of law in holding that a probate court lacks subject-matter jurisdiction over a legal malpractice claim. Appellants contend there exists controlling legal authority holding that a probate court possesses subject-matter jurisdiction over such claim, citing in support this court's decision in *Keith v. Bringardner,* 10th Dist. No. 07AP-666, 2008-Ohio-950, as well as two decisions of the Eleventh District Court of Appeals, *Holik v. Lafferty,* 11th Dist. No. 2005-A-0005, 2006-Ohio-2652, and *Ivancic v. Enos,* 11th Dist. No. 2011-L-050, 2012-Ohio-3639.

{¶ 19} At the outset, we note that this court's review of a trial court's decision on summary judgment is de novo. *Hapgood v. Conrad,* 11th Dist. No. 2000-T-0058, 2002-Ohio-3363, ¶ 13. Accordingly, we review the record to "determine whether any genuine issues of material fact exist and whether the moving party is entitled to judgment as a matter of law." *Id.*

{¶ 20} In general, "[a] probate court is a court of limited jurisdiction." *Batteiger v. Deutsch,* 2d Dist. No. 021933, 2008-Ohio-1582, ¶ 51. As such, "proceedings in probate court are restricted to those actions permitted by statute and by the Constitution." *Corron v. Corron,* 40 Ohio St.3d 75, 77 (1988). In accordance with R.C. 2101.24, "a

probate court has jurisdiction in probate and testamentary matters, the appointment of administrators, and the settlement of accounts of executors and administrators." *Batteiger* at ¶ 51. Legal malpractice claims, however, "are not listed in R.C. 2101.24." *Id.*

{¶ 21} As noted, appellants rely on this court's decision in *Bringardner,* in which we held that "probate courts can award monetary damages for claims that are within the court's exclusive jurisdiction." *Id.* at ¶ 12. *Bringardner*, however, did not involve (nor address) a claim for legal malpractice; rather, the appellant in that case brought claims for breach of fiduciary duty, fraud, intentional infliction of emotional distress, abuse of process, negligence, conversion, and civil conspiracy. While the decision recognizes that probate courts are not precluded from awarding monetary damages, we do not find appellants' reliance on *Bringardner* to be dispositive of the issue whether a probate court has jurisdiction over a legal malpractice claim.

{¶ 22} Under the facts in *Ivancic,* the plaintiff sued a defendant-attorney arising out of the defendant's administration of an estate, but the plaintiff did not assert a claim for legal malpractice; rather, the complaint set forth claims for breach of fiduciary duty and conversion. As such, the decision in *Ivancic*, similar to that in *Bringardner*, never addressed the issue of a probate court's jurisdiction over a legal malpractice action.

{¶ 23} Appellants also rely on *Holik,* a case in which the plaintiff-beneficiary brought a complaint in the general division of the common pleas court against an attorney who acted as administrator of an estate, asserting claims for breach of fiduciary duty, negligence, fraud, and legal malpractice. The trial court granted summary judgment in favor of the administrator, dismissing the claim for legal malpractice because there was no attorney-client relationship between the plaintiff-beneficiary and the administrator, and finding the probate court had jurisdiction over the remaining claims for breach of fiduciary duty, negligence, and fraud.

{¶ 24} The reviewing court in *Holik* affirmed the judgment of the trial court, finding that it correctly concluded the plaintiff-beneficiary could not sue the administrator for legal malpractice because the administrator was not acting as the plaintiff's attorney. In reaching that determination, the court in *Holik* held the trial court, i.e., the general division of the common pleas court, did not err in finding the administrator "was entitled to summary judgment regarding the legal malpractice claim."

*Id.* at ¶ 17. The appellate court's affirmance was therefore necessarily grounded on the premise that the general division of the common pleas court had subject-matter jurisdiction to determine the disposition of the legal malpractice claim. As such, we do not find *Holik* determinative of the issue raised by appellants.

{¶ 25} In the present case, the probate court found the cases relied on by appellants, including *Holik*, to be "unpersuasive as to the jurisdictional issue regarding legal malpractice." Rather, in dismissing the legal malpractice claim, the probate court cited with approval case law from various districts "that specifically articulates a lack of subject matter jurisdiction in the probate court for claims of legal malpractice." Upon review of relevant Ohio case law, we find no error with the probate court's jurisdictional determination.

{¶ 26} Numerous Ohio courts have held that the general division of the common pleas court, rather than the probate court, has jurisdiction over a legal malpractice action. *See Gilpin v. Bank One Corp.,* 12th Dist. No. CA2003-09-073, 2004-Ohio-3012, ¶ 12 ("Actions alleging legal malpractice * * * are within the jurisdiction of the general division of the common pleas court, not within the jurisdiction of the probate court."); *Buckman-Peirson v. Brannon,* 159 Ohio App.3d 12, 2004-Ohio-6074, ¶ 26 (2d Dist.) (holding that the common pleas court, not the probate court, had jurisdiction over the appellant's claim for legal malpractice); *Elden v. Sylvania Sav. Bank,* 6th Dist. No. L-83-211 (Oct. 21, 1983) (finding "appellants' cause of action to be, in essence, for malpractice, a matter not within the jurisdiction of the probate court as set forth in R.C. 2101.24"); *Carpenter v. Levering,* 5th Dist. No. 86-CA-19 (Apr. 17, 1987) (noting that probate court did not adjudicate legal malpractice claims against defendant, and that the trial court "has jurisdiction over legal malpractice claims").

{¶ 27} Finding the foregoing authority persuasive, we agree with the probate court's conclusion that appellants' claim for legal malpractice was not properly before it. Accordingly, the probate court did not err in dismissing such claim for lack of subject-matter jurisdiction.[1]

---

[1] We note that, following the probate court's dismissal of the legal malpractice claim, appellants filed a legal malpractice claim against appellees Cain and Lewandowski in the general division of the Franklin County Court of Common Pleas.

{¶ 28} Based on the foregoing, appellants' first assignment of error is not well-taken and is overruled.

{¶ 29} Under the second assignment of error, appellants contend the probate court erred in its application of the statute of limitations to each of their claims. With respect to the claims for conversion and fraud, appellants argue that both claims require application of the discovery rule. Further, while appellants acknowledge their claims for breach of fiduciary duty and negligence do not expressly provide for tolling under the discovery rule, appellants maintain the probate court erred in failing to apply the doctrine of equitable estoppel to the statute of limitations time period for those claims based on purported misrepresentations by appellees regarding applicable Ohio law.

{¶ 30} By way of background, in their arguments before the probate court on summary judgment, appellants asserted they were unaware the estate was potentially administered contrary to Ohio law until they were presented with information by an attorney in 2015 indicating they were the only proper heirs of the newly discovered assets. Appellees, on the other hand, argued the events that should have put appellants on notice occurred during the time of the administration of the decedent's estate, i.e., between 2004 and 2006.

{¶ 31} As noted in the probate court's summary judgment decision, appellants' claims for breach of fiduciary duty, negligence, conversion, and fraud are governed by the statute of limitations set forth in R.C. 2305.09, which states in part:

> Except as provided for in division (C) of this section, an action for any of the following causes shall be brought within four years after the cause thereof accrued:
>
> (A) For trespassing upon real property;
>
> (B) For the recovery of personal property, or for taking or detaining it;
>
> (C) For relief on the ground of fraud, except when the cause of action is a violation of section 2913.49 of the Revised Code, in which case the action shall be brought within five years after the cause thereof accrued;
>
> (D) For an injury to the rights of the plaintiff not arising on contract nor enumerated in sections 1304.35, 2305.10 to 2305.12, and 2305.14 of the Revised Code.

{¶ 32} Under Ohio law, R.C. 2305.09 "provides a general limitations period of four years for tort actions not specifically covered by other sections of the Ohio Revised Code." *Investors Reit One v. Jacobs*, 46 Ohio St.3d 176, 179 (1989). The Supreme Court of Ohio "has determined that, in some circumstances, a discovery rule is appropriate for calculating when a cause of action accrues for purposes of defining a limitations period," and "[w]ithin the parameters of expressly defined circumstances, the discovery rule is applicable to claims brought under R.C. 2305.09." *Id.* at 180.

{¶ 33} However, "[w]hile expressly providing a discovery rule for certain actions arising under R.C. 2305.09, no such rule was extended to general negligence claims." *Id.* at 181. *See also Marok v. Ohio State Univ.,* 10th Dist. No. 13AP-12, 2014-Ohio-1184, ¶ 25 ("The Supreme Court of Ohio * * * has not extended the discovery rule to general negligence claims."). Further, Ohio courts have held that the discovery rule does not apply to claims arising out of a breach of fiduciary duty. *See Wells v. C.J. Mahan Constr. Co.,* 10th Dist. No. 05AP-180, 2006-Ohio-1831, ¶ 28 ("the discovery rule is inapplicable to claims of breach of fiduciary duty"); *Clemens v. Nelson Fin. Group, Inc.*, 10th Dist. No. 14AP-537, 2015-Ohio-1232, ¶ 47 ("Because R.C. 2305.09 does not name claims for breach of fiduciary duty as claims that accrue only upon discovery, the discovery rule does not toll the statute of limitations for those claims.").

{¶ 34} In the instant action, appellants argued before the probate court that, although claims for negligence and breach of fiduciary duty are governed by the four-year statute of limitations under R.C. 2305.09, the court should apply the doctrine of equitable estoppel to prevent the statute of limitations from barring those claims. In support, appellants relied in part on *Doe v. Archdiocese of Cincinnati,* 109 Ohio St.3d 491, 2006-Ohio-2625, in which the Supreme Court had occasion to consider the doctrine of equitable estoppel in the context of a statute of limitations defense.

{¶ 35} In general, the doctrine of equitable estoppel "precludes a party from asserting certain facts where the party, by his conduct, has induced another to change his [or her] position in good faith reliance upon that conduct." *State ex rel. Cities Serv. Oil Co. v. Orteca*, 63 Ohio St.2d 295, 299 (1980). Under Ohio law, equitable estoppel "may be employed to prohibit the inequitable use of the statute of limitations." *Luft v. Perry Cty. Lumber & Supply Co.*, 10th Dist. No. 02AP-559, 2003-Ohio-2305, ¶ 74. In this

context, "courts have held that when applied to a limitations defense, a plaintiff must show that the defendant misrepresented the length of the limitations period, or promised a better settlement if the plaintiff did not bring suit." *JRC Holdings, Inc. v. Samsel Servs. Co.*, 166 Ohio App.3d 328, 2006-Ohio-2148, ¶ 28 (11th Dist.).

{¶ 36} Under the facts of *Doe,* the plaintiff alleged sexual abuse by a church employee occurring from 1980 through 1983. In April 2002, the plaintiff learned that other individuals were also victims, and the plaintiff subsequently filed an action against the defendant church and its employee. The defendants filed a motion to dismiss, asserting the claims were barred by the two-year statute of limitations for tort actions, and by the five-year statute of limitations under the Ohio Corrupt Activities Act. The trial court granted the motion to dismiss, but the appellate court reversed.

{¶ 37} On further appeal, the Supreme Court considered the plaintiff's argument that the doctrine of equitable estoppel "should prevent the archdiocese from asserting the statute-of-limitations defense" based on the plaintiff's assertion that the archdiocese "fraudulently concealed facts from Doe that would have provided him with information to bring a claim against the archdiocese earlier." *Doe* at ¶ 42. The Supreme Court rejected the plaintiff's argument, stating as follows:

> We hold that Doe's cause of action was not concealed from him - - i.e., he knew or should have known all of the elements of potential causes of action against the archdiocese within two years after he reached majority. Doe concedes in his complaint that he at all times knew the identity of his alleged perpetrator and knew the employer of his alleged perpetrator. Thus, he had all of the facts necessary to investigate and prosecute his potential causes of action against the archdiocese.

*Id.* at ¶ 47.

{¶ 38} In the present case, in addressing appellants' assertion that equitable estoppel should prevent the statute of limitations from barring their claims for breach of fiduciary duty and negligence, the probate court found "[t]he facts that caused the court in *Doe* to hold that the doctrine of equitable estoppel did not apply are analogous to the plaintiffs' facts here." (Oct. 31, 2016 Decision & Entry at 11.) Specifically, the probate court held in part:

Although the plaintiffs claim that * * * Freed and Attorney Panitch misrepresented the law to them at the time the estate was administered and furthermore misrepresented that their fiduciary and attorney fees were proper, the true state of the law and statutes was never concealed from the plaintiffs. At all times, plaintiffs were in possession of the information necessary to determine how the assets of the estate should be distributed. * * * Freed and Attorney Panitch provided the amount of fees they wished to take, the plaintiffs consented to such, and those amounts were the ones that were received by * * * Freed and Attorney Panitch. These facts are uncontroverted. The only thing that changed between the time of the original estate administration and the events in 2015 is that the plaintiffs received counsel from an attorney about their rights as beneficiaries that was contrary to the information they received from * * * Freed and Attorney Panitch. Plaintiffs had the ability to consult their own counsel at any time during the applicable statute of limitation period; that information was not concealed from them, nor was the information altered to induce them into false reliance.

(Oct. 31, 2016 Decision & Entry at 11-12.)

{¶ 39} Based on our review of the record and applicable law, we find no error by the probate court in failing to apply the doctrine of equitable estoppel to the facts of this case. In *Lottridge v. Gahanna-Creekside Invests., LLC,* 10th Dist. No. 14AP-600, 2015-Ohio-2168, this court addressed an appellant's claim that the appellee was equitably estopped from raising the statute of limitations as a defense to the appellant's claims. In considering the applicability of the doctrine of equitable estoppel in the context of tolling the statute of limitations, we cited with approval a decision of the Fifth District Court of Appeals, *Kegg v. Mansfield,* 5th Dist. No. 2000CA00311 (Apr. 30, 2001), in which that court "rejected the application of equitable estoppel when the alleged representations related to the merits of plaintiff's claims and were 'in no way related to misrepresentations concerning the statute of limitations or a promise of settlement.' " *Lottridge* at ¶ 21, quoting *Kegg.*

{¶ 40} This court's decision in *Lottridge* also cited with approval a federal decision, *Allen v. Andersen Windows, Inc.,* 913 F.Supp.2d 490 (S.D.Ohio 2012), in which that court construed Ohio law with respect to the doctrine of equitable estoppel. Under the facts of *Allen,* a homeowner brought an action against a window maker, alleging that its

replacement windows were defectively designed and manufactured.  In finding that the homeowner's claim was time barred, the court in *Allen* rejected the plaintiff's equitable estoppel argument in which it was alleged that the defendant failed to disclose the windows were defectively manufactured.  Relying in part on the Supreme Court's decision in *Doe,* the court in *Allen* held in part:

> The problem with these allegations is that they describe a factual basis for certain claims for relief, but *not* a basis for applying *equitable estoppel* related to the statute of limitations.  "In order to apply the doctrine to the statute of limitations, a party must show that the misrepresentation 'was calculated to induce a plaintiff to forego the right to sue.' " *Hoeppner v. Jess Howard Elec. Co.,* 150 Ohio App.3d 216, 2002-Ohio-6167 (10th Dist.) * * *.  Allen has alleged, at most, that Andersen engaged in acts and omissions that concealed defects in Andersen's windows and that Allen (and others similarly situated to her), as a result, could not detect the latent defects until those defects manifested themselves. * * * But the Complaint is devoid of any allegation that Andersen made a misrepresentation that induced her to *forgo filing suit,* which is the sine qua non of equitable estoppel as it relates to estoppel to rely on the statute of limitations as a defense. * * * *Doe,* 116 Ohio St.3d 538, 2008-Ohio-67.

(Emphasis sic.)  *Id.* at 511.

{¶ 41} Similarly, in the instant case, while appellants contend that appellees made misrepresentations going to the merits of their claims, i.e., that appellees misrepresented the law by informing them that all ten of the decedent's nieces and nephews were beneficiaries under Ohio's statute of descent and distribution, the record contains no evidence as to purported misrepresentations inducing appellants to delay or forego filing a lawsuit.  Here, the alleged misrepresentations by appellees "are in no way related to misrepresentations concerning the statute of limitations," and we agree with the probate court that the doctrine of equitable estoppel is not applicable to toll the statute of limitations as to the claims for breach of fiduciary duty and negligence.  *Kegg.*

{¶ 42} We next consider appellants' claims that the probate court erred in finding that, even under the discovery rule, the latest date the claims for fraud and conversion began to accrue was January 30, 2006, when the probate court approved the final accounting.  As noted, appellants argued before the probate court that these claims did

not arise until 2015 when an attorney informed them that the newly discovered assets (i.e., the funds in Roy Greenawalt's name in the Ohio Division of Unclaimed Funds) would be distributed differently than the original assets of the decedent's estate.

{¶ 43} Pursuant to R.C. 2305.09, the statute of limitations for fraud and conversion is four years. *Hicks v. Garrett,* 5th Dist. No. 2011CA00109, 2012-Ohio-3560, ¶ 115. In general, however, "the discovery rule can act to toll the statute of limitations for claims for common law conversion and fraud." *Mattlin Holdings LLC v. First City Bank,* 189 Ohio App.3d 213, 2010-Ohio-3700, ¶ 8 (10th Dist.).

{¶ 44} Under Ohio law, "[a] cause of action for fraud or conversion accrues either when the fraud is discovered, or [when] in the exercise of reasonable diligence, the fraud should have been discovered." *Cundall v. U.S. Bank,* 122 Ohio St.3d 188, 2009-Ohio-2523, ¶ 29, citing *Investors Reit One* at paragraph 2b of the syllabus. In "determining whether the exercise of reasonable diligence should have discovered a case of fraud, the relevant inquiry is whether the facts known ' "would lead a fair and prudent man, using ordinary care and thoughtfulness, to make further inquiry." ' " *Id.*, quoting *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 181 (1984), quoting *Schofield v. Cleveland Trust Co.*, 149 Ohio St. 133, 142 (1949). Further, " '[*c*]*onstructive* knowledge of facts, rather than *actual* knowledge of their legal significance, is enough to start the statute of limitations running under the discovery rule.' " (Emphasis sic.) *Id.* at ¶ 30, quoting *Flowers v. Walker,* 63 Ohio St.3d 546, 549 (1992).

{¶ 45} In the instant case, in addressing the applicability of the discovery rule, the probate court rejected appellants' argument that their fraud claim did not accrue until 2015, holding in part:

> The information plaintiffs needed to make a proper determination about the distribution of estate assets, as well as to assert these claims against defendants Ms. Freed and Attorney Panitch were available to them in the original administration and not concealed from the plaintiffs. The only thing that changed between the time of the original administration and the newly discovered assets found in 2015 is that the plaintiffs received a legal opinion from separate counsel that the estate may have been distributed incorrectly. The information to make that determination was never concealed in any way from the plaintiffs, fraudulently or otherwise. The plaintiffs knew their mother was named in the

> will and they knew that Ms. Freed intended to distribute according to the statute of descent and distribution because both named beneficiaries predeceased the decedent. The plaintiffs waived notice of the probate of the will; they knew of the intended distribution of assets; and they were aware of the final distribution of assets. They knew what Ms. Freed and Attorney Panitch intended to charge in fees. They consented to those amounts in two separate instances; Ms. Freed and Attorney Panitch then took the amounts to which the plaintiffs consented. At any time, either on their own or with the aid of an attorney hired to represent their individual interests, the plaintiffs had the opportunity during the original administration to question whether the distribution under descent and distribution was correct and to preserve their rights. The plaintiffs need not have hired their own attorney to do so, but it is well established in Ohio that they are presumed to know the law.

(Oct. 31, 2016 Decision & Entry at 14.)

{¶ 46} Thus, the probate court determined that appellants had the requisite knowledge of all relevant facts at the time of the final accounting in January 2006 to start the statute of limitations running under the discovery rule for purposes of the fraud (as well as the conversion) claim. Upon review, we find the record supports that determination.

{¶ 47} Under Ohio law, "the statute of limitations under the discovery rule applies 'to the discovery of *facts*, not to the discovery of what the *law* requires.' " (Emphasis sic.) *Reyes v. McCabe*, 10th Dist. No. 96APE05-690 (Mar. 31, 1997), quoting *Lynch v. Dial Fin. Co.*, 101 Ohio App.3d 742, 747 (8th Dist.1995). Thus, "it is knowledge of the facts, not legal theories, which starts the running of the statute of limitations." *Al-Mosawi v. Plummer*, 2d Dist. No. 24985, 2012-Ohio-6034, ¶ 23, citing *Hershberger v. Akron City Hosp.*, 34 Ohio St.3d 1, 5 (1987). In this respect, "[i]gnorance of the law does not toll the statute of limitations." *Id.*, citing *Lynch* at 748. Rather, "[i]t is ignorance of facts that provides relief." *Id.*

{¶ 48} Here, as found by the probate court, the record on summary judgment reveals no facts appellees concealed, fraudulently or otherwise, from appellants. As set forth in the probate court's decision, appellants were aware their mother was named in the will, and that Freed intended to distribute the assets of the estate in accordance with

the statute of descent and distribution based on the fact both of the named beneficiaries under the will predeceased the decedent; further, appellants were fully aware of the final distribution of the assets, i.e., they were informed that all ten nieces and nephews were to receive an equal share of the decedent's estate, and appellees at no time concealed how the estate was going to be distributed. Cain and Lewandowski were also aware of the fees submitted to the probate court by appellees and, as noted by the probate court, they consented to such fees.

{¶ 49} Thus, at the time of the probate court's judgment entry approving the final account, filed January 30, 2006, appellants had knowledge of all relevant facts giving rise to their subsequent claims against appellees (i.e., claims based on purported misrepresentations by appellees as to application of the statute of descent and distribution). What appellants discovered years later (i.e., in 2015), based on information they received from an attorney indicating Ohio's statute of descent and distribution required a different distribution than the one approved by the probate court in 2006, was the legal significance of facts already known to them. Under Ohio law, however, "[a]ll persons are 'conclusively presumed to know the law.' " *In re Estate of Holycross*, 112 Ohio St.3d 203, 2007-Ohio-1, ¶ 27, quoting *Ohio v. Pinkney*, 36 Ohio St.3d 190, 198 (1988). Accordingly, appellants' ignorance of the legal significance of known facts "cannot be used to circumvent the statute of limitations." *Lynch* at 748. *See also Sullivan v. Westfield Ins. Co.,* 11th Dist. No. 2012-L-004, 2013-Ohio-146, ¶ 34-35 (trial court did not err in failing to apply discovery rule to plaintiffs' fraud claim where plaintiffs were in full possession of all facts necessary to bring their claim; their lack of understanding of the legal significance until their attorney told them 16 years later that they might have a claim did not act to toll the statute of limitations).

{¶ 50} As previously noted, it is " '[*c*]*onstructive* knowledge of facts, rather than actual knowledge of their legal significance,' " that is sufficient to begin the statute of limitations running under the discovery rule. (Emphasis sic.) *Cundall* at ¶ 30, quoting *Walker* at 549. Here, because appellants had actual and constructive knowledge of all relevant facts at the time of the final accounting, the probate court properly determined that the causes of action accrued no later than January 30, 2006. Accordingly, because we find no genuine issue of material fact as to the issue of the accrual date, the probate

court did not err in finding that the claims for fraud and conversion (as well as the claims for negligence and breach of fiduciary duty) were barred by the applicable statute of limitations.

{¶ 51} Appellants' second assignment of error is not well-taken and is overruled.

{¶ 52} Under the third assignment of error, appellants argue the probate court erred by not applying the statute of limitations applicable to a surcharge action. According to appellants, OCI is subject to a ten-year statute of limitations on a surcharge claim, pursuant to R.C. 2305.12, which provides in part that an action against the bond of an administrator "shall be brought within ten years after the cause thereof accrued."

{¶ 53} In response, OCI argues that, in accordance with Ohio law, its liability as a surety is limited to that of its principal, Freed. Alternatively, OCI argues that the ten-year statute of limitations on a statutory bond does not apply where there are specific statutes of limitations that govern appellants' claims. In support, OCI relies on *Bd. of Edn. of Cleveland City School Dist. v. United Pacific Ins. Co.,* 8th Dist. No. 60374 (June 28, 1991) (holding that "[a] clear reading of the two statutes of limitations in pari materia indicates the legislature intended the ten year statute of limitations on official bonds to apply in those situations when no other statute is applicable").

{¶ 54} In general, a surety's liability "is dependent upon, and can be no greater than, that of the principal." *State v. Herbert*, 49 Ohio St.2d 88, 128 (1976). *See also State v. Fed. Ins. Co.,* 10th Dist. No. 04AP-1350, 2005-Ohio-6807, ¶ 9 ("Because the surety's obligation is derived from that of the principal, the liability of the surety is ordinarily measured by the liability of the principal."). In this respect, it has been held that "a surety can assert the defenses of its principal," and therefore whatever " 'amounts to a good defense to the original liability of the principal, is a good defense for the sureties when sued upon the collateral undertaking.' " *Holben v. Interstate Motor Freight Sys.*, 31 Ohio St.3d 152, 156-57 (1987), quoting *State use of Commrs. of Knox Cty. v. Blake*, 2 Ohio St. 147, 150 (1853). *See also Hopkins v. INA Underwriters Ins. Co.,* 44 Ohio App.3d 186, 189 (4th Dist.1988) ("As a general rule, a surety on a bond is not liable unless the principal is and, therefore, may plead any defense available to the principal with the exception of defenses which are purely personal to a principal, such as infancy, incapacity, or bankruptcy.").

{¶ 55} Because of the general rule that a surety's liability is dependent upon the liability of the principal, " 'there can be no right of action against the surety, as such, * * * [and] [u]ntil the liability of the principal is fixed and determined, a right of recovery against his surety will not accrue.' " *Herbert* at 128-29, quoting 50 Ohio Jurisprudence 2d, Suretyship, Section 42, at 557 (1961). Accordingly, " 'Ohio courts have generally held that an action accrues against the surety on a bond when "some sort of determination or adjudication of the liability of the principal has occurred." ' " *Rothschild v. Eckstein,* 9th Dist. No. 09CA009733, 2010-Ohio-4285, ¶ 28, quoting *In re Thomas,* 7th Dist. No. 06 MO 7, 2008-Ohio-2409, ¶ 75, quoting *Bd. of Edn. of Cleveland.*

{¶ 56} In the present case, having found that appellants' claims for breach of fiduciary duty, negligence, conversion, and fraud were barred by the applicable statutes of limitations, the probate court determined that "the surcharge claim against * * * OCI also must fail." We construe the probate court's determination as recognition of the fact that the surety's liability is derived from that of the principal, and that the surety may plead defenses available to the principal. We find no error with that determination, and therefore conclude the probate court did not err in granting summary judgment in favor of OCI. *See, e.g., Rothschild* at ¶ 28 (where administrator was not found liable to estate, "a surcharge action against [the surety] could not have accrued," and therefore probate court properly granted summary judgment in favor of surety).

{¶ 57} Accordingly, appellants' third assignment of error is overruled.

{¶ 58} Under the fourth assignment of error, appellants assert the trial court erred in failing to grant their motion for partial summary judgment. Appellants argue the probate court failed to address the merits of their claims because it erroneously held it lacked jurisdiction of the legal malpractice claim, and because it erred in holding the statute of limitations time period expired on the other claims. However, in light of our disposition of the above assignments of error, finding that the probate court did not err in holding it lacked subject-matter jurisdiction over the legal malpractice claim, and that the probate court properly held the remaining claims were barred by the applicable statutes of limitations, appellants' fourth assignment of error is not well-taken and is overruled.

{¶ 59} Based on the foregoing, appellants' four assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas, Probate Division, is hereby affirmed.

*Judgment affirmed.*

SADLER and HORTON, JJ., concur.

————————————