[Cite as *Peh v. Kollin*, 2020-Ohio-4491.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY**

| | | |
|---|---|---|
| TONY PEH | : | |
| | : | |
| Plaintiff-Appellant | : | Appellate Case No. 2019-CA-71 |
| | : | |
| v. | : | Trial Court Case No. 2018-CV-59 |
| | : | |
| THOMAS KOLLIN, et al. | : | (Civil Appeal from |
| | : | Common Pleas Court) |
| Defendants-Appellees | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 18th day of September, 2020.

. . . . . . . . . . .

JONATHAN HOLLINGSWORTH, Atty. Reg. No. 0022976, 6494 Centerville Business Parkway, Centerville, Ohio 45459
        Attorney for Plaintiff-Appellant

NATHAN BOONE, Atty. Reg. No. 0095986, 3725 Pentagon Boulevard, Suite 270, Dayton, Ohio 45431
        Attorney for Defendants-Appellees Thomas Kollin, The Kollin Firm, LLC, & Kollin and Wilkins, PLL

DAVID P. KAMP, Atty. Reg. No. 0020665 & SARAH E. ABBOTT, Atty. Reg. No. 0086099, 255 East Fifth Street, Suite 1900, Cincinnati, Ohio 45202
        Attorneys for Defendant-Appellees Frost Brown Todd LLC & Benjamin J. Helwig

D. JEFFREY IRELAND, Atty. Reg. No. 0010443 & DONALD E. BURTON, Atty. Reg. No. 0040553, 110 North Main Street, Suite 1600, Dayton, OH 45402
        Attorneys for Defendant-Appellees Taft, Stettinius & Hollister LLP

. . . . . . . . . . . .

HALL, J.

{¶ 1} Tony Peh appeals from the trial court's order granting summary judgment in favor of the defendant-appellee attorneys and law firms on his claims of legal malpractice related to their representation while defending Peh in a breach-of-contract action. We conclude that the malpractice claims accrued years before Peh commenced his malpractice action, meaning that the claims were barred by the one-year statute of limitations in R.C. 2305.11(A).   We affirm the judgment of the trial court.

## I. Factual and Procedural Background

{¶ 2} Peh's malpractice action related to a breach-of-contract suit filed against him by Marilyn Reid. In 1996, Peh, Reid, and others became co-owners of a restaurant named Wallaby's. During the start-up phase, Reid purchased kitchen equipment and leased it to Wallaby's. The lease had a three-year term, from March 1996 to March 1999, and Peh signed the equipment lease on behalf of Wallaby's and as a surety. No lease payments were ever made, and Wallaby's never became profitable. The restaurant ceased operations in 2006 or early 2007.

{¶ 3} In 2009, Reid filed a breach-of-contract action against Wallaby's and Peh, claiming that they owed her more than $636,000 under the equipment lease. Peh retained attorney Thomas Kollin to defend him. A bench trial was held at which Peh argued that Reid could not recover based on equitable doctrines, including latches, accord and satisfaction, and unclean hands. The trial court agreed and, in May 2011, entered judgment in favor of Peh.

{¶ 4} Reid appealed, and Peh retained attorney Benjamin J. Helwig to represent him on appeal. In 2012, we reversed the trial court's judgment, finding that Reid had been

entitled to recover under the equipment lease. We concluded that the unclean-hands doctrine had not applied, because it had not been raised in the answers; that the evidence had not justified a finding of latches on Reid's part; that there had been no accord and satisfaction; and that the doctrine of estoppel had not precluded Reid's recovery. We remanded for further proceedings related to damages. *See Reid v. Wallaby's Inc.,* 2d Dist. Greene No. 2010-CA-36, 2012-Ohio-1437. On remand, after a damages hearing, the trial court entered an order in December 2012 awarding Reid $314,604.83. Reid appealed, and we reversed and remanded for calculation of pre-judgment and post-judgment interest. *See Reid v. Wallaby's Inc.,* 2d Dist. Greene No. 2013-CA-2, 2013-Ohio-3842. In October 2013, the trial court entered an order awarding Reid $401,376.52, plus interest.

{¶ 5} Several years later, in 2017, Peh's wife consulted with an attorney regarding defense against a creditor action arising from Reid's efforts to collect on the 2013 judgment. In May 2017, the attorney sent her an email saying that he had been reviewing the pleadings in the original case and was puzzled why the four-year statute of limitations in R.C. 1310.52(A) had not been argued as an affirmative defense to Reid's breach-of-contract claim filed in 2009.

{¶ 6} Armed with this new knowledge, Peh filed a legal malpractice action in January 2018 against Kollin, The Kollin Firm, LLC, and Kollin & Wilkins, PLL and against Helwig and the law firms at which he was employed while representing Peh, Frost Brown Todd LLC and Taft, Stettinius & Hollister LLP. Peh alleged in his complaint that the attorneys had failed to argue the four-year statute-of-limitations defense (Kollin to the trial court, and Helwig on appeal). Peh alleged that, had the attorneys argued this affirmative defense, Reid's claims against him and Wallaby's would have been dismissed, and all

the litigation and expenses would have been avoided.

{¶ 7} Peh moved for summary judgment, and the Kollin defendants and the Helwig defendants each also moved for summary judgment. Kollin argued, among other things, that the one-year statute of limitations in R.C. 2305.11(A) barred Peh's malpractice claims. Both Kollin and Helwig argued that they could not have properly argued the statute of limitations as a defense, because in the equipment lease Peh had waived the right to assert it.[1]

{¶ 8} On October 9, 2019, the trial court sustained the defendants' motions for summary judgment and overruled Peh's motion. The court agreed that there was no malpractice, because the equipment lease waived all defenses, including any statute of limitations.

{¶ 9} Peh appeals.

## II. Analysis

{¶ 10} Peh assigns three errors to the trial court:

The trial court erred in granting summary judgment in favor of Defendants Thomas Kollin, Esq., The Kollin Firm, LLC, and Kollin & Wilkins, PLL ("Kollin Defendants").

The trial court erred in granting summary judgment in favor of Defendants Benjamin J. Helwig, Esq., Taft Stettinius & Hollister, LLP, and Frost Brown Todd, LLC ("Helwig Defendants").

---

[1] Paragraph 3.05 of the lease stated: "The Lessee hereby waives, and agrees not to assert, any and all existing and future claims, defenses, and offsets against any rent or other payments due hereunder. The Lessee agrees to pay the rent and other amounts hereunder regardless of any claim, defense, or offset which may be asserted by the Lessee or on its behalf."

The trial court erred in not granting summary judgment in favor of Plaintiff and against the Kollin and Helwig Defendants.

{¶ 11} The summary-judgment standard is a familiar one: "A trial court may grant a moving party summary judgment pursuant to Civ.R. 56 if there are no genuine issues of material fact remaining to be litigated, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed most strongly in his favor." *Smith v. Five Rivers MetroParks*, 134 Ohio App.3d 754, 760, 732 N.E.2d 422 (2d Dist.1999). As an appellate court, we "review summary judgment decisions *de novo,* which means that we apply the same standards as the trial court." *GNFH, Inc. v. W. Am. Ins. Co.,* 172 Ohio App.3d 127, 2007-Ohio-2722, 873 N.E.2d 345, ¶ 16 (2d Dist.).

{¶ 12} In a nutshell, Peh's argument is that the trial court incorrectly concluded that he waived the statute-of-limitations defense in the equipment lease. He argues that the four-year statute of limitations in R.C. 1310.52(A) was plainly a complete bar to Reid's claim, so Kollin committed malpractice by not arguing it to the trial court and Helwig committed malpractice by not arguing the defense on appeal. As Peh states in his appellate brief: "The underlying facts of this case are simple. A four-year statute of limitations defense was available to Peh, which would have been a complete bar to the Reid Litigation. * * * However, the Defendants never attempted, despite several opportunities, to * * * obtain a favorable ruling on the basis of the bar of the four-year statute of limitations, even though it would have prevailed as a matter of law had the trial court or the appellate court considered its merits."

{¶ 13} In their summary-judgment motions, the defendants advanced several independent arguments for why summary judgment in their favor was appropriate on Peh's malpractice claims. Kollin's first argument was that Peh's claim against him was barred by the malpractice statute of limitations, R.C. 2305.11(A). Peh too briefly addressed this statute of limitations in his motion for summary judgment, arguing that it did not bar his malpractice claims. The trial court noted Kollin's statute-of-limitations argument but did not decide the issue, concluding instead that there was no malpractice, because the statute-of-limitations defense to Reid's claim had been waived in the lease.

{¶ 14} Our standard of review does not require us to defer to the trial court's decision. We think that this case is better decided on the malpractice statute of limitations.

*The malpractice statute of limitations*

{¶ 15} R.C. 2305.11(A) requires that a legal-malpractice action "be commenced within one year after the cause of action accrued." The Ohio Supreme Court has said that, under this statute, "an action for legal malpractice accrues and the statute of limitations begins to run when there is a cognizable event whereby the client discovers or should have discovered that his injury was related to his attorney's act or non-act and the client is put on notice of a need to pursue his possible remedies against the attorney or when the attorney-client relationship for that particular transaction or undertaking terminates, whichever occurs later." *Zimmie v. Calfee, Halter and Griswold*, 43 Ohio St.3d 54, 538 N.E.2d 398 (1989), syllabus, citing *Omni-Food & Fashion, Inc. v. Smith*, 38 Ohio St.3d 385, 528 N.E.2d 941 (1988). Accordingly, two factual determinations are required: "(1) When should the client have known that he or she may have an injury caused by his or her attorney? and (2) When did the attorney-client relationship terminate? The latter of

these two dates is the date that starts the running of the statute of limitations." (Citations omitted.) *Smith v. Conley*, 109 Ohio St.3d 141, 2006-Ohio-2035, 846 N.E.2d 509, ¶ 4.

{¶ 16} Under the "discovery rule," to determine the accrual date a court should consider "when the injured party became aware, or should have become aware, of the extent and seriousness of his or her alleged legal problem; whether the injured party was aware, or should have been aware, that the damage or injury alleged was related to a specific legal transaction or undertaking previously rendered him or her; and whether such damage or injury would put a reasonable person on notice of the need for further inquiry as to the cause of such damage or injury." *Omni-Food* at 388. In short, the discovery rule looks at knowledge of injury and knowledge that the attorney's conduct caused the injury.

{¶ 17} "A plaintiff need not have discovered all the relevant facts necessary to file a claim in order to trigger the statute of limitations." (Citation omitted.) *Flowers v. Walker*, 63 Ohio St.3d 546, 549, 589 N.E.2d 1284 (1992). That is, the plaintiff need not " 'be aware or suffer the full extent of his injury before there is a cognizable event.' " *Griggs v. Bookwalter*, 2d Dist. Montgomery No. 21220, 2006-Ohio-5392, ¶ 20, quoting *Deutsch v. Keating, Muething & Klekamp*, 2d Dist. Montgomery No. 20121, 2005-Ohio-206, ¶ 16. Moreover, "it is knowledge of the facts, not legal theories, which starts the running of the statute of limitations." *Al-Mosawi v. Plummer*, 2d Dist. Montgomery No. 24985, 2012-Ohio-6034, ¶ 23, citing *Lynch v. Dial Fin. Co. of Ohio No. 1, Inc.*, 101 Ohio App.3d 742, 748, 656 N.E.2d 714 (8th Dist.1995); *Cain v. Panitch*, 10th Dist. Franklin No. 16AP-758, 2018-Ohio-1595, ¶ 47 (quoting the same). *See also Flowers* at 549 (saying that "*constructive* knowledge of facts, rather than *actual* knowledge of their legal significance,

is enough to start the statute of limitations running under the discovery rule" (emphasis sic.)).

*When did the malpractice claim against Kollin accrue?*

{¶ 18} The attorney-client relationship between Kollin and Peh terminated when Helwig was substituted for Kollin in September 2011, which was more than six years before Peh filed his malpractice action. So the next question is whether, under the discovery rule, a later "cognizable event" occurred.

{¶ 19} Peh's complaint alleges that Kollin negligently failed "to present to the trial court the statute of limitations defense relating to the Equipment Lease so as to avoid the entire litigation and expenses relating thereto. Had this statute of limitations defense been asserted and argued at the trial court level, the claims against Plaintiff and Wallaby's Inc. would have been dismissed as being time barred." (Complaint, ¶ 48). In other words, the malpractice claim alleges that as a result of Kollin's conduct an adverse judgment was entered against Peh on Reid's claim and Peh had to pay substantial attorneys' fees and litigation expenses. The trial court concluded the argued statute of limitations defense did not apply, and the parties disagree as to whether it applied. For our analysis, we need not decide what statute of limitations applied to the underlying contract between Peh and Reid. For our purposes, we will assume arguendo that a four-year statute of limitations could have been raised in the contract litigation case.

{¶ 20} Peh should have known that Kollin had not argued a statute-of-limitations defense to the trial court by the end of the trial, although he may not have been aware of his potential liability because he prevailed at trial. But Peh should have been aware of his potential liability when, in March 2012, we reversed the trial court's judgment, exposing

him to monetary damages. At that time, Peh should have known that Kollin's failure to argue the statute-of-limitations defense might subject him to a large judgment for the equipment he used in the restaurant. Peh knew that Kollin had not argued the statute of limitations, he knew that what Kollin had argued had not been successful, he knew that an adverse judgment would be entered against him, and he knew about he was exposed to additional litigation fees and expenses. Our reversal of the trial court's judgment in March 2012, then, was the cognizable event that started the one-year statute of limitations running on the malpractice action against Kollin.

{¶ 21} Adverse judgments have been recognized as cognizable events. In *Smith v. Conley*, 109 Ohio St.3d 141, 2006-Ohio-2035, 846 N.E.2d 509, the Ohio Supreme Court concluded that a plaintiff's conviction was the cognizable event that triggered the statute of limitations for legal malpractice. The legal malpractice plaintiff claimed that the attorney who had defended him in a criminal trial had committed malpractice by failing to request a directed verdict and failing to offer evidence that, in the plaintiff view, clearly exonerated him. The Court noted that the admission or lack of admission of evidence by itself would not have put the plaintiff on notice of potential malpractice, because trial strategy and the presentation of evidence are usually in the sole discretion of the trial attorney. But the plaintiff alleged that attorney's malpractice resulted in plaintiff's conviction. Thus, the court concluded that the date of the conviction was the date on which the plaintiff should have known that he had an injury caused by the attorney. In *Burdge Law Office Co., L.P.A. v. Wilson*, 2d Dist. Montgomery No. 20687, 2005-Ohio-3746, a magistrate had recommended awarding the plaintiff litigation expenses and fees incurred during an arbitration with an automobile dealership, but the trial court declined

to follow that recommendation. After the plaintiff's attorney notified him about the adverse ruling, the plaintiff-client retained new counsel and appealed, and the appellate court affirmed. When the first attorney filed a claim for attorney fees against the plaintiff, the plaintiff filed a counterclaim for legal malpractice based on what had occurred in the trial court. We concluded that the malpractice statute of limitations barred the counterclaim, finding that the earliest cognizable event was the date that counsel notified the client of the trial court's adverse ruling.

**{¶ 22}** In the present case, our reversal of the trial court's judgment in March 2012 was the earliest cognizable event that should have put Peh on notice that Kollin may have committed malpractice in the trial court. It was then that Peh should have known Kollin's conduct caused his claimed injuries.

*When did the malpractice claim against Helwig accrue?*

**{¶ 23}** Peh alleges that Helwig's improper conduct was not arguing the four-year statute-of-limitations defense against Reid's claim in the appellate court. He claims the same injuries resulted as resulted from Kollin's failure, i.e., an adverse judgment and unnecessary fees and expenses. As to when Peh knew about Helwig's alleged misconduct, he should have known by the end of the appellate arguments in Reid's first appeal. And Peh should have known about his claimed injuries when we reversed the trial court's judgment in March 2012. For the same reasons that our reversal of the trial court's judgment was a cognizable event as to Kollin, then, it was a cognizable event as to Helwig. Our 2012 judgment should have put Peh on notice that Helwig may have committed malpractice in the appellate court, and Peh should have known he had injuries caused by Helwig.

**{¶ 24}** But the attorney-client relationship between Helwig and Peh continued until May 2013, when Helwig withdrew as appellate counsel. So under the termination rule, it was then that Peh's malpractice claim against Helwig accrued, which was still years before Peh commenced his malpractice action against Helwig.

*Peh's "discovery" of the law*

**{¶ 25}** Peh's position is that the malpractice statute of limitations was tolled until 2017, when he learned from another attorney that the four-year statute of limitations had arguably barred Reid's claim. Peh says that "[he], a lay person, could not have known that his attorneys (Kollin and Helwig) failed to assert/argue the applicable statute of limitations to protect him against Reid's breach of equipment lease claim in the Underlying Litigation." But Peh knew, or at least he should have known, the fact that his attorneys did not argue the four-year statute of limitations as a defense. What he may not have actually known was that the defense was available under Ohio law. But Peh was presumed to know this.

**{¶ 26}** "Ignorance of the law does not toll the statute of limitations. It is ignorance of facts that provides relief." (Citations omitted.) *Al-Mosawi*, 2d Dist. Montgomery No. 24985, 2012-Ohio-6034, at ¶ 23; *Cain*, 10th Dist. Franklin No. 16AP-758, 2018-Ohio-1595, at ¶ 47 (quoting the first sentence). *See also Estate of Greenawalt v. Estate of Freed*, 10th Dist. Franklin No. 17AP-62, 2018-Ohio-2603, ¶ 30. " 'All persons are "conclusively presumed to know the law." ' " *Cain* at ¶ 49, quoting *In re Estate of Holycross*, 112 Ohio St.3d 203, 2007-Ohio-1, 858 N.E.2d 805, ¶ 27, quoting *State v. Pinkney*, 36 Ohio St.3d 190, 198, 522 N.E.2d 555 (1988). Accordingly, "ignorance of the legal significance of known facts 'cannot be used to circumvent the statute of

limitations.' " *Id.*, quoting *Lynch*, 101 Ohio App.3d at 748, 656 N.E.2d 714.

{¶ 27} The Tenth District has applied this principle in two related cases. First, in *Cain*, the plaintiffs brought claims against the attorneys who administered an estate years earlier for, among other things, fraud and conversion. A legal-malpractice claim was also brought, but it was dismissed and brought separately. In 2015, new assets were discovered and a legal opinion from separate counsel made the plaintiffs aware that the attorneys may have distributed the estate incorrectly. The appellate court concluded that the applicable statute of limitations barred the fraud and conversion claims because the claims had accrued in 2006 when the probate court had entered judgment approving the final account. The court concluded that, at that time, the plaintiffs knew all the relevant facts on which their claims against the attorneys were based. " 'The only thing that changed between the time of the original administration and the newly discovered assets found in 2015 is that the plaintiffs received a legal opinion from separate counsel that the estate may have been distributed incorrectly.' " *Cain* at ¶ 45 (quoting the trial court). As the appellate court stated: "What appellants discovered years later (i.e., in 2015), based on information they received from an attorney * * *, was the legal significance of facts already known to them." *Id.* at ¶ 49. Because everyone is presumed to know the law, said the court, the plaintiffs' "ignorance of the legal significance of known facts 'cannot be used to circumvent the statute of limitations.' " *Id.*, quoting *Lynch* at 748.

{¶ 28} The malpractice claim that was dismissed in *Cain* was then pursued in *Greenawalt*. The plaintiffs alleged that they had only recently learned of the wrongful disbursements and excessive attorney fees and fiduciary fees paid to the attorneys. Consistent with its holding in *Cain*, the appellate court held that the plaintiffs knew in 2006

all the facts regarding the terms of the will and the manner of distribution. "[I]t is constructive knowledge of the facts," said the court, "rather than actual knowledge of their legal significance, that is enough to start the statute of limitations under the discovery rule." *Greenawalt* at ¶ 31. The plaintiffs had full knowledge of (and consented to) all the fees that they later claimed were excessive. "[Plaintiffs'] discovery, years later, that the fees were allegedly excessive under the probate statute based on information from another attorney is not sufficient to delay the statute of limitations." *Id.*

{¶ 29} The same principle was applied in *Lynch* to bar claims of certain statutory violations. There, the plaintiffs claimed that certain insurance charges that they had paid 17 years earlier violated a statute. The appellate court concluded that the claims were barred by the applicable statute of limitations because 17 years earlier, the plaintiffs knew or should have known about the charges. "What plaintiffs 'discovered' seventeen years later is that their lawyer told them that these charges allegedly violated R.C. 1321.57. That 'discovery' cannot be used to circumvent the statute of limitations or limitations would become meaningless." *Lynch* at 748. *See also Sullivan v. Westfield Ins. Co.*, 11th Dist. Lake No. 2012-L-004, 2013-Ohio-146 (concluding that the trial court did not err in failing to apply the discovery rule to plaintiffs' fraud claim where plaintiffs were in full possession of all facts necessary to bring their claim; their lack of understanding of the legal significance until their attorney told them 16 years later that they might have a claim did not act to toll the statute of limitations).

{¶ 30} Lastly, we applied the principle in *Al-Mosawi*, 2d Dist. Montgomery No. 24985, 2012-Ohio-6034, to conclude that the plaintiff's civil-rights claim under 42 U.S.C. 1983, personal-injury claim based on negligence, and action against a political

subdivision in that case were barred by the applicable statute of limitations. We said that "[m]erely because [the plaintiff] was not aware that under American law he could sue the Sheriff's Department does not toll the statute of limitations." *Id.* at ¶ 23. "[I]gnorance of the law is not a tolling event for purposes of the statute of limitations." *Id.*

{¶ 31} By 2012, Peh knew that his attorneys had not argued the statute-of-limitations defense against Reid's claim, that an adverse judgment had been entered against him, and that attorney fees and expenses were adding up. What Peh discovered years later in 2017 was the legal significance of the statute of limitations and of his attorneys' decisions not to argue it. Peh's ignorance of the law "cannot be used to circumvent the statute of limitations." *Lynch,* 101 Ohio App.3d at 748, 656 N.E.2d 714. When there is no evidence that an attorney has hidden or covered up an error, a litigant receiving an adverse judgment cannot wait years to find another attorney to search the record for a nugget of negligence which that new lawyer points to as malpractice.

{¶ 32} We offer no opinion on the merits of Peh's legal malpractice action and no opinion on whether the outcome of the contract claim might have been different if Kollin and Helwig had pursued different tactics. Our conclusion is simply that it's too late now to find out.

### III. Conclusion

{¶ 33} We conclude that there was no genuine issue of material fact as to the date that Peh's malpractice claims accrued. The claim against Kollin accrued, at the latest, in March 2012, when we reversed the trial court's judgment in *Reid v. Wallaby's Inc.*, 2d Dist. Greene No. 2010-CA-36, 2012-Ohio-1437. Our reversal was a cognizable event as to Helwig too, but the attorney-client relationship between Helwig and Peh did not

terminate until later, in 2013, so that was when Peh's claim against Helwig accrued. As both accrual dates were many years before Peh brought his legal malpractice action, the action was barred by the one-year statute of limitations in R.C. 2305.11(A).

{¶ 34} The entry of summary judgment on the claims in Peh's malpractice action against Kollin, Helwig, and their respective law firms was appropriate, albeit for a different reason from that relied on by the trial court (but an issue argued in the trial court). Peh's assignments of error are overruled. The trial court's judgment is affirmed.

. . . . . . . . . . . . .

FROELICH, J. and WELBAUM, J., concur.

Copies sent to:

Jonathan Hollingsworth
Nathan Boone
David P. Kamp
Sarah E. Abbott
D. Jeffrey Ireland
Donald E. Burton
Hon. James A. Brogan